LGONZALES, J.
In this appeal, General Motors Corporation (GMC) challenges a trial court order *494 requiring implementation of a class action settlement in a manner not set forth in the settlement agreement. GMC contends the trial court order makes impermissible substantive changes to the settlement agreement. The class action plaintiffs contend the trial court order was a proper exercise of the trial court’s power to oversee the administration and implementation of the settlement agreement.
FACTUAL AND PROCEDURAL BACKGROUND
General Background
Beginning in 1992, class action lawsuits were filed nationwide against GMC by-owners of GMC pickup trucks that had been manufactured with side-mounted fuel tanks located outside of the vehicle frame rails. Although attempts to settle the approximate 5.8 million class claims have been made, thus far, none have been successful. See e.g., In re: General Motors Corporation Pick-up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3rd Cir.1995), cert. denied, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). In 1998, this court vacated a trial court judgment from the Eighteenth Judicial District Court certifying a nationwide settlement class and approving a settlement agreement. White v. General Motors Corporation, 97-1028 (La.App. 1 Cir. 6/29/98), 718 So.2d 480, unit denied, 98-2502, 98-2511, 98-2522 (La.12/11/98), 729 So.2d 587, 590, 591.[2] The matter was remanded to the trial court for further proceedings. On January 15, 1999, the trial court held a hearing, and on January 20, 1999, signed an “Order and Supplemental Findings in Support of Final Order and Judgment,” reaffirming (1) its previous certification of the settlement class, (2) its final approval of the proposed settlement, and (3) its awards for attorney fees and costs.[3]
1 fiTerms of the Settlement Agreement
Generally, the settlement agreement provides for members of the settlement class[4] to receive a $1,000.00 certificate for each GM pickup truck[5] owned toward the *495 purchase of any new GM vehicle[6] from an authorized GM dealer. The $1,000.00 certificate is valid for 15 months following the mailing of the final notice of the settlement. If the class member has sold his GM pickup truck, he may freely transfer his $1,000.00 certifícate to the purchaser,[7] who may use the certificate in the same manner as it could have been used by the settlement class member, provided the purchaser is the current owner of the truck. Following the initial 15 month period, the certificates are usable for additional periods of | fi18 and 35 months, and for lesser value, depending on whether the settlement class member is a consumer, fleet, or governmental owner.[8]
In lieu of a $1,000.00 certificate, a settlement class member may sell or transfer his entire interest in his certificate, by exchanging the certificate for a $500.00 “third party certificate” that is usable for the unexpired portion of the initial 15 month period by a designated third party toward the purchase of a new GM vehicle, without proof of ownership of a GM pickup truck.[9] To obtain a third party certificate, the $1,000.00 certificate must be sent with a written request that the third party certificate be issued in the name of the designated party, and stating the name and address of the designated third party.
Under the settlement agreement, holders of certificates need not trade in a GM pickup truck in order to use the eertifi-cates toward the purchase of a new GM vehicle; nor is a certificate holder required to disclose his intention to use a certificate toward the purchase of a new GM vehicle until he has made his best deal with the dealer. . Only one certificate of any kind provided for in the settlement agreement may be applied toward the purchase of each new GM vehicle. Certificates may not be used by authorized GM dealers or their affiliates.
The settlement agreement also provides for the establishment of a safety research project, funded by GMC’s payment of $4.1 million, to promote independent research to enhance motor vehicle fuel system safety. Upon the effective date of the settlement, and conditioned upon its continuing performance of all terms and conditions of the settlement agreement, the settlement agreement provides that GMC[10] shall be released from any and [ 7all claims brought, or which could have been brought by the settlement class members, arising out of, or in any way relating to the fuel system of the GM pickup trucks containing the side-mounted fuel tanks. The settlement does not preclude the assertion of claims for damages arising out of any vehicle fires or crashes that result in personal injury, death, or physical damage to property.
“Implementation” of the Settlement
After its January 20, 1999 order approving the settlement, the trial court sched *496 uled a hearing to be held on March 22, 1999, “to facilitate implementation of the settlement” and “for the purpose of considering and approving the form of the notice to be disseminated to the class members and such other matters as may be pertinent to implementation of the settlement.” At the hearing, the parties entered the following pertinent stipulations: (1) subject to its meeting the lowest bid, Moore Corporation Limited (Moore) would process proofs of claims, issue original certificates, and process requests for and issue third party certificates; and (2) the notice to the settlement class members would include language informing them of their right to sell them certificates to persons of their choice at the best price they could negotiate, would advise the settlement class members that counsel for the plaintiffs (Class counsel) could provide further information and assistance in transferring or selling the certificates, and would provide a toll free number where Class counsel could be reached. The trial court approved the stipulations and adopted them as the order of the court.
On April 1, 1999, the trial court issued an order, amending the stipulation of counsel and its March 22, 1999 oral order. In the April 1, 1999 order, Moore’s responsibility was changed to handling the final notice and claim form functions, and the third party certificate functions, but GMC was ordered to select the entity to process requests for, print, and mail the original certificates to settlement class members. In the event Moore did not agree to meet the lowest bid, the order provided the lowest responsible bidder was selected to perform the final notice and claim form functions. Further, the April 1, 1999 order approved the form of the final notice and claim form (aj^copy of which was attached to the order) for mailing to the settlement class. The approved notice contained the stipulated reference to a toll free number where Class counsel could be reached for assistance in transferring or selling certificates.
On May 14, 1999, Class counsel filed a “Motion for Order Relating to Administration and/or Implementation of Settlement” requesting that the trial court set a hearing to address several issues. Hearings were held and evidence was introduced on May 24, 1999, and June 18, 1999. At the hearings, Class counsel introduced, among other things,’ a sample of a letter (cash option letter) it sought to have included in the mail-out envelope containing the final notice and proof of claim form to settlement class members.[11] The cash option letter informs the settlement class member that the settlement “provides you with a Certificate for a discount off the purchase price of any new GM light-duty truck or automobile ..., or allows you to transfer your interests in your Certificate to a third party.” The cash option letter goes on to inform the settlement class member that, rather than receive a certificate, he may receive a check for $100.00 from an entity identified as “Certificate Redemption Group” (CRG).[12] At the bottom of the cash option letter is a detachable “$100 *497 CASH OFFER” form which allows the settlement class member to receive $100.00 instead of his $1,000.00 certificate as follows:
To receive $100.00 instead of a Certificate, complete, sign and date the “Application for Certificate” and this “Cash Offer”, and return this form together with the signed “Application for Certificate” form in the enclosed postage paid reply envelope. I elect to receive $100.00 instead of a Certificate and I hereby irrevocably: (1) instruct that my Certificate be |adelivered to Chase Bank of Texas, N.A.; (2) acknowledge that I am transferring my entire interest in the Certificate and this Settlement in exchange for a CRG check for $100.00 issued on Chase Bank of Texas, N.A.; and (3) authorize CRG, or its designee, to endorse my Certificate and send me a $100.00 check. (Bolding and underscoring in original.)
Following the May 24, 1999 hearing, counsel for GMC inquired about the existence of any agreements between Class counsel and CRG regarding the cash option being offered to settlement class members in the cash option letter. By letter dated June 8, 1999, Class counsel informed counsel for GMC that CRG had previously agreed to reimburse Class counsel $1.55 million.
Involvement of CRG as a “Market-Maker”
The record indicates Class counsel and CRG have had an ongoing relationship for several years during this class aetioii litigation. In 1995, the Third Circuit Court of Appeals set aside a settlement agreement, similar to that at issue herein, reached in a multi-district litigation proceeding involving the same parties herein, because the settlement was “not fair, reasonable, or adequate.” In re: General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 818 (3rd Cir.1995), cert. denied, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). One of the reasons the settlement was found deficient was due to a lack of proof as to whether a settlement class member’s option to transfer his $1,000.00 certificate was of any value. The federal court noted the value of the transfer option depended on the development of a secondary market for the certificates, and that the terms of the then settlement agreement precluded the “development of a market-making clearing house mechanism.” Id., 55 F.3d at 809.
When the nationwide litigation was brought to the Louisiana court system, the settlement agreement was revised to increase the transferability of the certificates and to facilitate the development of a secondary market. At a fairness hearing held on November 6, 1996, Class counsel referred to an offer allegedly received by Class counsel from an entity known as “ICMC investors” to purchase all certificates issued within the|infirst 75 days after issuance of the proof of claim for $100.00.[13] Apparently, “ICMC investors” is another name for CRG.
The record does not contain an agreement between Class counsel and CRG regarding the cash option offer.[14] However, by including the cash option letter containing CRG’s alleged offer, Class counsel sought to further develop the secondary market by making CRG the court approved “market maker” who would buy the certificates from settlement class members and then market them to willing buyers.
At the June 18, 1999 hearing, GMC rigorously objected to the inclusion of the cash option letter, arguing its inclusion had *498 never been agreed to by the parties, and its inclusion was contrary to the terms of the settlement agreement. GMC argued Class counsel’s attempt to include the cash option letter, contrary to the terms of the settlement, was an attempt to financially gain from the agreement with CRG whereby CRG agreed to reimburse Class counsel $1.55 million in conjunction with its role as the market maker.[15]
InThe “Implementation” Order
On June 21, 1999, the trial court signed an “Order Relating to Class Counsel’s Motion and Amended Motion Relating to Administration and/or Implementation of Settlement,” (June 21, 1999 order) which forms the basis of GMC’s current appeal.[16] The June 21, 1999 order, among other things: (1) approved the format, text, and quality of the envelope to be used for mailing the final settlement notice and proof of claim form; (2) approved the inclusion of a business reply envelope in the mail-out as well as the format and text of the business reply envelope; (3) approved the inclusion of the cash option letter in the mail-out along with the final notice and proof of claim form; (4) directed that Ex-perian, as the lowest bidder, would be responsible for printing and mailing the final notice and related material, for processing proofs of claims and issuing original certificates, and processing requests for and issuing third party certificates; and (5) ordered “GM/Polk” to immediately provide Experian with the necessary database, subject to certain conditions.
In the June 21, 1999 order and in “Findings of Fact” signed the same day, the trial court concluded it had the power to order the relief sought by Class Counsel because the issues addressed in Class Counsel’s motion “all clearly relate[d] to the administration and implementation of the Settlement,” and because the settlement agreement specifically provided that “the form and content of [this] Notice shall be subject to Court review and approval... ].” (Emphasis in original.)
h.AUTHORITY OF THE TRIAL COURT TO ORDER INCLUSION OF CASH OPTION LETTER IN FINAL NOTICE MAIL-OUT
In assignment of error number one, GMC contends the trial court erred in *499 ordering GMC to send the cash option letter with the final notice to class members because:
(1)the order improperly changed the parties’ settlement agreement, which specifies what the notice is required to do and precludes the cash option letter;
(2) the cash option letter conflicts with the requirements in the settlement agreement for the issuance and exchange of settlement certificates, and the trial court’s order rewrites the settlement agreement to accommodate the terms of the cash option letter;
(3) the order is an improper substantive modification of the final judgment that approved the settlement without a cash option letter;
(4) the parties had agreed in their March 22, 1999 compromise that GMC did not have to send the cash option letter; and
(5) the record shows the trial court made no attempt to analyze the propriety of the cash option letter or Class Counsel’s self-dealing and conflicts of interest, and the record does not support a finding that the order was justified.
Applicable Legal Principles
The authority of the trial court to order the inclusion of the cash option letter in the final notice mail-out is governed by the terms of the settlement agreement itself and Louisiana laws regarding compromise and class action settlements.
Under Section VII.7 of the settlement agreement, the final notice to be mailed to settlement class members was to inform them that the court had given final approval to the settlement agreement and “explaining the procedure and providing Proof of Claim forms for SETTLEMENT CLASS members to obtain Certificates.” Further, Section VII.7 provides, “[t]he form and content of this Notice shall be subject to court review and approval at the request of either General Motors’ Counsel or CLASS COUNSEL.” Additionally, Section XI.4 of the settlement agreement states that the trial court “retain[s] continuing and exclusive jurisdiction over the parties hereto, including all members of the SETTLEMENT CLASS, and over the administration and enforcement of the Settlement and the benefits to the SETTLEMENT CLASS hereunder.” These provisions clearly Vindicate the trial court had authority to oversee the implementation of the mail-out of the final notices for the settlement.[17]
However, the trial court’s authority to review and approve the form and content of the final notice, as well as its continuing jurisdiction over the administration and enforcement of the settlement agreement, is not without limits. Section XI.l of the settlement agreement provides that it “and its attachments shall constitute the entire Agreement of the parties and shall not be subject to any change, modification, amendment, or addition without the express written consent of counsel on behalf of all parties to the Agreement.” Further, a settlement, or “transaction or compromise” as referred to in civilian terms, regulates only the differences that appear clearly to be intended by the parties, and does not extend to differences that the parties never intended to include in the settlement. La. C.C. arts. 3071, 3073. A settlement agreement is the law between the parties and must be interpreted according to their intent. Smith v. Walker, 96-2813 (La.App. 1 Cir. 2/20/98), 708 So.2d 797, 802, writ denied, 98-0757 (La.5/1/98), 718 So.2d 418. The compromise instrument is governed by the same *500 general rules of construction applicable to contracts. Ortego v. State, Department of Transportation and Development, 96-1322 (La.2/25/97), 689 So.2d 1358, 1363. Accordingly, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. In determining those matters the parties intended to settle, consideration must be given to the contract as a whole and in light of attending events and circumstances. Ortego, 689 So.2d at 1363. Thus, the intent the words of the compromise instrument express, in light of the surrounding circumstances at the time of execution of the agreement, is controlling. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 748.
114Intent of the Parties as to the Scope of the Settlement Agreement
As indicated, an earlier version of the settlement agreement at issue herein was set aside by the Third Circuit Court of Appeals in In re: General Motors Corporation Piekr-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3rd Cir.1995), cert. denied, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995), due in part to the court’s conclusion that, under the terms of the previous settlement agreement, it was possible that certificate holders would be unable to realize any significant value from the transfer option. Id., 55 F.3d at 809. When the settlement was revised and submitted to the Louisiana district court, changes were made to increase the transferability of the certificates. Further, as of the date of the November 6, 1996 fairness hearing, all parties to the agreement knew the trial court was concerned about the transferability of the certificates and the existence of a secondary market, as well as the existence of CRG as the potential market maker.
In its June 21, 1999 findings of fact, the trial court concluded the inclusion of the cash option letter and $100.00 offer were “critical to the development of a secondary market.” Although it may be true that the inclusion of the cash option letter would enhance the development of the secondary market for the certificates, the fact remains that CRG’s participation in the certificate redemption process as the “court approved” market maker offering settlement class members a cash option was not addressed in the settlement agreement. If the parties would have agreed to the alternative cash option as opposed to the issuance of certificates, it would have been in the settlement agreement. The record clearly indicates GMC agreed to include language in the final notice informing settlement class members that Class Counsel could provide further information and assistance in transferring or selling their certificates and providing a toll free telephone number where Class Counsel could be reached. However, an agreement to include a telephone number is not an agreement to include a letter offering settlement class members a cash option rather than a certificate. The plain words of the settlement 115agreement, as well as the background and events surrounding the settlement agreement, indicate there was no such agreement between the parties. The fact that the settlement agreement does not specifically preclude the cash option letter is not an indication that the inclusion of the cash option letter was agreed upon.
The plaintiffs argue the trial court’s June 21, 1999 order was a proper exercise of its authority to review the “form and content” of the final notice under Sections VII.7 and XI.4 of the settlement agreement. They contend the settlement agreement lacked “detailed protocol establishing [the] actual mechanisms governing certificate requests, redemptions, and transfers.” In support of this argument, plaintiffs refer to a sentence in Section III.D of the settlement which provides that settlement class members “may sell or transfer their entire interest in any or all of their Certificates.” Wfiien read in isolation, this sentence indeed provides no *501 mechanism dictating how the sale or transfer would occur. However, the remainder of Section D clearly sets forth the mechanism to be used “[i]n the event of such a sale or transfer.” And although the mechanism set forth in Section D does not preclude the participation of a market maker in the certifícate redemption process, it plainly does not envision the inclusion of a cash option letter in the final notice mail-out, authorizing a market maker’s cash option offer to become a court approved alternative to GMC’s issuance of certificates to the settlement class members. Thus, the trial court’s authority to review the “form and content” of the final notice did not extend to the issuance of an order that changed the terms of the settlement agreement. Under Section XI. 1 of the settlement agreement, “any change, modification, amendment, or addition” could only occur with “the express written consent of counsel on behalf of all parties” to the settlement agreement. Such consent was not given in this case. As noted by the United States Supreme Court, “the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.” Evans v. Jeff D., 475 U.S. 717, 726, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986).
11 (Therefore, because the trial court exceeded its authority, the June 21, 1999 order must be reversed to the extent it requires the inclusion of the cash option letter in the final notice mail-out.[18]
TRIAL COURT’S AUTHORITY TO SELECT EXPERIAN, INC. TO PERFORM FINAL NOTICE AND CLAIM FORM MAIL-OUT FUNCTION
In assignment of error number three, GMC contends the trial court erred in selecting an entity known as Experian to perform the final notice/claim form mail-out function for the settlement of the class action claims.
According to the settlement agreement, entities other than the parties would be involved in steps necessary to implement the settlement. Under Section VII.2(d), the preliminary notice of settlement was to be printed and mailed to the settlement class by entities selected by GMC; under Section III, an entity or entities selected by Class Counsel and GMC, subject to court approval, would receive proofs of claims from settlement class members and issue certificates (original certificate function); under Section III.D, an entity or entities selected by Class Counsel and GMC, and approved by the court, would process third party certificate requests (third party certificate function); and under Section VII.7, the entity or entities selected to print and mail the preliminary notice (as provided in Section VII.2(d)) would also print and mail the final notice of settlement (final notice/claim form function).
On March 22, 1999, the parties stipulated in open court that Moore would perform the original certificate function and the third party certificate function, subject to its meeting the lowest responsible bid requirements. No mention was made of the final notice/claim form function at the March 22, 1999 hearing. The trial court approved the stipulation and adopted it as the order of the court.
|17On April 1, 1999, the trial court issued an order, amending the stipulation of counsel and its March 22, 1999 oral order. In the April 1, 1999 order, Moore’s responsibility was changed to handling the final notice/claim form function, if it were able *502 to meet the lowest responsible bid, and the third party certificate function, but GMC was ordered to select the entity to perform the original certificate function. In the event Moore did not agree to meet the lowest bid, the April 1, 1999 order provided the lowest responsible bidder was selected to perform the final notice/claim form function.
On June 10, 1999, Class Counsel notified the trial court and other counsel by teleco-py transmission that Moore was “no longer willing to perform any of the [mail-out] functions.” At the June 18, 1999 hearing, Class Counsel offered into evidence a letter dated June 17,1999, from Steve Elliott, National Vice President of Sales for Expe-rian, in which Mr. Elliott confirmed “Ex-perian’s in-house capabilities to produce the Final Notice/Application for Certificate Mailing in connection with the GM C/K Pick-up Truck Settlement.” Mr. John Jira, an Experian employee, also testified at the hearing. Mr. Jira testified Experi-an was capable of handling all three of the mail-out functions required by the settlement agreement.
In its June 21,1999 order, the trial court ordered that Experian was chosen to perform the final notice/claim form function, the original certificate function, and the third party certificate function. The trial court further ordered GMC to mail the final notice/claim form “through Experian, having met the low bid requirement.” In its June 21, 1999 findings of fact, the trial court stated the following regarding the replacement of Moore with Experian:
8. The Court, acknowledging that its order of April 1, provided, that if Moore agreed to meet the lowest responsible bid, was selected for the [final notice/claim form function]. The Court was advised that, although, Moore met the terms of the lowest responsible bid, it chose to withdraw its bid on Thursday, June 10, 1999. Class Counsel proposed the substitution of Experian for Moore in its proposed order of Thursday, June 17, 1999. In light of Experian’s willingness to match Moore’s previous low bid, execute any “typical limitation” agreement with Polk in connection with the use of Polk’s data and Experian’s willingness to accomplish the mail-out within 14 to 21 days of the execution of the [June 21,1999] Order, the Court finds that hsExperian should be substituted to perform the [final notice/claim form] function as set forth in the Order of April 1.
GMC argues the trial court erred in approving Experian to perform the final notice/claim form function, because the April 1, 1999 order specifically provided that “the lowest responsible bidder” would perform the final notice/claim form function in the event Moore did not meet the lowest responsible bid. Although there is no proof in the record to support its claim, GMC, in brief, contends an entity known as Communications Concepts, Inc. was the lowest responsible bidder. The plaintiffs argue the trial court had the authority to resolve the dispute regarding the choice of the entity for the final notice/claim form function under Section VII.2(d) of the settlement agreement, which provides “[a]ny dispute regarding the entities selected to print and mail the Notice shall be resolved by the Court....”[19]
We conclude the trial court impermissi-bly ordered Experian to perform the final notice/mail-out function. The April 1,1999 order specifically provided that “if [Moore] does not agree to meet the lowest respon *503 sible bid for the [final notice/claim form] function in the Agreement, the lowest responsible bidder is selected for that function .... ” Therefore, the trial court was bound to enforce its previous order. Even if the settlement agreement conferred upon the trial court the authority to resolve disputes regarding the entity chosen to print and mail the final notice/claim form function, the April 1, 1999 order indicated there is no dispute to be resolved— that is, upon Moore’s default, the order stated “lowest responsible bidder is selected for that function.”
In light of the trial court’s April 1, 1999 order requiring that the final notice/claim form function be performed by the lowest responsible bidder, we conclude the trial court erred in approving Experian to perform the final notice/claim form function, and the order will be reversed in this regard.
J^TRIAL COURT’S AUTHORITY TO ORDER “GM/POLK” TO PROVIDE INFORMATION TO EXPERIAN
In assignment of error number two, GMC contends the trial court erred in ordering “GM/Polk”[20] to “immediately provide Experian with the necessary database, subject to Experian’s acquiescence to the ‘typical limitations’, to accomplish the [final notice/claim form] mail-out.” In resolving assignment of error number three, we determined the trial court impermissi-bly approved Experian to perform the final notice/claim form mail-out function for the settlement of the class action claims. Therefore, we further conclude the trial court erred in ordering that any information be provided to Experian. The trial court’s order to the contrary will be reversed.
DECREE
For the foregoing reasons, the June 21, 1999 order of the trial court is REVERSED IN PART and REMANDED. It is REVERSED insofar as it: (1) orders the inclusion of the cash option letter in the final notice/claim form mail-out, and (2) orders Experian to perform the final notice/claim form function, and (3) orders “GM/Polk” to provide Experian “with the necessary database, subject to Experian’s acquiescence to the ‘typical limitations’, to accomplish the [final notice/claim form] mail-out.” This matter is REMANDED to the trial court for further proceedings consistent with this opinion.[21]
Costs of the appeal are to be shared equally by plaintiffs and GMC.
*504 J20
APPENDIX A
1 JOSEPH A. WHITE, HI, * NUMBER 42,865 DIV "D"
2 JOHN L. MONSON AND ANTHONY
3 O. CASHIOLA, SR. * 18TH JUDICIAL DISTRICT
4 COURT
6 VERSUS * PARISH OF IBERVILLE
7
8 GENERAL MOTORS CORPORATION * STATE OP LOUISIANA
9
10 ****»»****«»**»**«aa»«#ft*a**«****«*********
11
12 AGREEMENT OP SETTLEMENT
13
14 THIS AGREEMENT is entered into this 27th day of June, 1996, by
15 and between General Motors Corporation (hereinafter ‘General Motors')
16and Plaintiffs in Joseph A. White, HI, John L. Monson and Anthony O.
17 Cashiola, Sr. v. General Motors Corporation, by and through their
is undersigned attorneys.
19l. PREAMBLE
20 WHEREAS, General Motors is a corporation organized under the
21laws of the State of Delaware and is engaged in the business of, among
22other things, manufacturing automotive products;
23 WHEREAS, Plaintiffs are the named plaintiffs in the above styled
24 Petition pending in the 18th Judicial District Court for the Parish of
25 Iberville (“the Court”), which was Sled as a class action on behalf of
26 registered owners of certain 1973 through 1987 model Chevrolet or GMC
27 Truck "C" or ”K" series pickup trucks (the “Litigation);
28 WHEREAS, Plaintiffs have asserted claims in the Petition based on
29 allegations that GM PICKUP TRUCKS are equipped with fuel tanks
30 mounted on the outside of the frame mils which are defective in
*505 J21
1 placement, design and implementation and seek compensation in
2 connection therewith;
3 WHEREAS, General Motors denies the material allegations in the
4 Petition, denies any wrongdoing of any kind;
5 WHEREAS, the parties have the benefit of extensive discovery and
6 have independently investigated the facts and analyzed the legal issues,
7 and recognize the uncertainties of the outcome in the litigation and the
* likelihood that any final result would require years of further complex
9 litigation and substantial expense;
10 WHEREAS, Plaintiffs’ Counsel on behalf of the SETTLEMENT
11 CLASS believe, in light of the costs, risks and delay of litigation balanced
12 against the benefits of the settlement to the SETTLEMENT CLASS, that
13 settlement at this time as provided in this Agreement will be in the best
14 interests of the SETTLEMENT CLASS;
15 WHEREAS, General Motora and Plaintiffs' Counsel agree that the
16 settlement provided in this Agreement is a fair, reasonable, and adequate
17 resolution of the Litigation;
18 WHEREAS, the parties desire to compromise and settle in the
19 Litigation all issues and claims which relate to the subject matter of the
20 Litigation and which have been, or which could have been brought in
21 this or in any other state or federal court or in any other proceeding, of
22 any kind or nature whatsoever by or on behalf of persons who are
2
*506 _J22
1 included in the SETTLEMENT CLASS, except claims arising from
2 personal injury, death or physical damage to property that have resulted
3 or may result from vehicle Crea or crashes;
4 WHEREAS, the parties desire and intend to seek Court approval of
5 the settlement of the Litigation as set forth in this Agreement and, upon
6 Court approval, the parties intend also to seek a Final Order and
7 Judgment from the Court dismissing the claims of all members of the
* SETTLEMENT CLASS with prejudice;
9 NOW, THEREFORE, it is agreed that in consideration of the
10 premises and mutual covenants set forth in this Agreement and the entry
11 by the Court of a Final Order and Judgment dismissing with prejudice
12 the claims asserted in this Litigation by all members of the SETTLEMENT
13 CLASS and approving the terms and conditions of the settlement as set
14 forth in this Agreement, as required by the Louisiana Code of Civil
is Procedure, the Litigation shall be settled and compromised under the
16 terms and conditions contained herein.
17 II. DEFINITIONS
is As used throughout this Agreement and in the Exhibits annexed
19 hereto, in addition to any definitions elsewhere in this Agreement, the
20 following terms shall have the meanings set forth below:
21 (a) “CHEVROLET" shall mean the Chevrolet Motor
22 Division of General Motors.
3
*507 I23
1 (b) "CLASS COUNSEL" shall mean counsel appointed by
2 the Court to represent the Settlement Class.
3 (c) "CONSUMER" shall mean any SETTLEMENT CLASS
4 member owning one or two GM PICKUP TRUCKS and shall include any
5 parent, child, sibling or spouse of a CONSUMER, who is residing within
6 the same household as the CONSUMER at the time the CERTIFICATE is
7 used.
I (d) "EFFECTIVE DATE OF SETTLEMENT shall be the day
9 on which the Final Order and Judgment described in Paragraph VÜ.4.
10 below becomes final. For purposes of the Agreement, the Final Order
II and Judgment shall be deemed to become final on the later oí (i) the 71 st
12 day after it is entered (the day following the date on which it is no longer
13 subject to review by appeal or otherwise) if no motion for new trial or
14 notice of appeal is filed or (ii) if any such documents are filed, on the day
15 following the date on which the Final Order and Judgment is not subject
16 to further judicial review or appeal, either by reason of affirmance by a
17 court of last resort or by reason of lapse of time or otherwise, provided
18 that the final Order and Judgment are not reversed or substantially
19 modified by the Court or an appellate court
20 (e) "FLEET shall mean any SETTLEMENT CLASS
21 member which is either a person or entity owning three or more GM
4

*508
Jm

1 PICKUP TRUCKS, except a GOVERNMENTAL ENTITY or the United
2 States government.
3 (i) "FUEL SYSTEM" shall mean the design, manufacture
4 and placement of the fuel tanks outside the frame rails and all related
3 fuel system designs and components, including fuel lines, fuel pumps,
6 fuel filler neck, fill cap, fuel tank shields, attachment devices, and
7 surrounding structure and components of GM PICKUP TRUCKS.
8 (g) “GM PICKUP TRUCK[SJ" means (i) 1973 through 1986
9 model year General Motors full-size pickup truck or chassis cab models
to of the "C" or "K" series which include the following models: Chevrolet
ti CIO, C2Ü, C30, K10, K20, K30 and GMC Truck C1500, C2500, C3500,
12 K1500, K2500, K3500 and (ii) 1987 through 1991 model year General
13 Motors full-size pickup truck or chassis cab models of the "R" or "V"
K series, which include the following models: Chevrolet RIO, R20, R30,
15 R2500, R3500, VIO, V20, V30, V2500, V3500 and GMC Truck R1500,
16 R2500, R3500, V1500, V2500 and V3S00. GM Pickup Trucks that have
17 been scrapped are not included.
18 (h) "GMC TRUCK" shall mean the GMC Truck Division of
19 General Motors, now known as the Pontiac GMC Division.
20 (t) "GOVERNMENTAL ENTITY" shall mean any
21 governmental unit, including, but not limited to cities, states, counties,
22 parishes municipalities, townships or any subdivisions or agencies
5
*509 125
3 thereof, and shall also include any governmental unit known by any
2 other name, regardless of the number of GM PICKUP TRUCKS owned,
3 except for the United State* government;
4 O') "NEW GM VEHICLE* shall mean any new and unused
s General Motors light truck or automobile, which include Chevrolet, Geo,
6 GMC Truck, Buick, Oldsmobile, Pontiac and Cadillac models. NEW GM
7 VEHICLE shall not include Saturn models or electric powered vehicles.
8 (k) "SETTLEMENT CLASS" shall separately include a
9 CONSUMER sub-class, a FLEET sub-class, and a GOVERNMENTAL
10 ENTITY sub-class and shaU be defined as: All CONSUMERS, FLEETS
U and GOVERNMENTAL ENTITIES who purchased in the United States
12 and are owners as of 12:01 AM, July 4, 1996, of one or more GM PICKUP
13 TRUCKS. “Settlement Class Members" shall mean all persons or entities
14 within one or more of the sub-classes who do not submit a request for
15 exclusion from the SETTLMENT CLASS within the time and in the
16 manner provided in this Agreement and the Court’s Order and Notice.
17 III. BENEFITS TO SETTLEMENT CLASS MEMBERS
is In consideration for dismissal of the Litigation with prejudice
19 against the Settlement Class under the terms of this Agreement, General
20 Motors agrees as follows:
21 Upon receipt of a Proof of Claim form postmarked within 15
22 months following the mailing of the final notice pursuant to paragraph
fi
*510 _Í26
1 VII.7., an entity or entities selected by CLASS COUNSEL and General
2 Motors and paid by General Motors, subject to Court approval, shall
3 issue to each SETTLEMENT CLASS member for each GM PICKUP TRUCK
4 owned a Certificate toward the purchase of any NEW GM VEHICLE
5 purchased from an authorized GM dealer of that line and make subject
6 to the following terms and conditions:
7 A. For CONSUMERS, the CONSUMER Certificates shall be
8 usable for a total of thirty three months following the mailing of the final
9 notice pursuant to paragraph VEL7. for the following amounts as
10 specified below, and shall only be transferable as set forth below:
11 1. For the first IS months, $1,000 toward the purchase
t2 of a NEW GM VEHICLE when used by the CONSUMER (as defined in
13 paragraph II.(c)) named on the CONSUMER Certificate. The CONSUMER
H Certificate shall be freely transferable to any purchaser, except an
u authorized General Motors dealer or its affiliated entities, of the GM
16 PICKUP TRUCK identified on the CONSUMER Certificate, and may be
17 used by the transferee toward the purchase of any NEW GM VEHICLE in
it the same manner as it could have been used by the CONSUMER,
19 provided the transferee is the current owner of the GM PICKUP TRUCK at
20 the time of purchase of the NEW GM VEHICLE and provides proof of
21 current ownership (registration or title).
7
*511 127
1 2. For the final 18 months, $500 toward the purchase of
2 a NEW GM VEHICLE when used by the CONSUMER (as defined in
3 paragraph n.(c)) named on the CONSUMER Certificate.
4 3. During the final 18 month period, the Certificates shall
s be freely transferable’ following endorsement by the CONSUMER,
6 provided that upon transfer a Certificate may only be used by a
7 transferee for $250 toward the purchase of any NEW GM VEHICLE by
* the transferee.
9 B. For FLEETS, the FLEET Certificates shall be usable for a
30 total of fifty months following the mailing of the final notice pursuant to
i J paragraph VI1.7. for the following amounts and shall only be transferable
12 as set forth below:
13 1. For the first 15 months, $1,000 toward the purchase
u of a NEW GM VEHICLE when used by the FLEET named on the FLEET
15 Certificate. The FLEET Certificate shall be freely transferable to any
16 purchaser of the GM PICKUP TRUCK identified on the FLEET Certificate,
17 except an authorized General Motors dealer or its affiliated entities, and
18 may be used by the transferee toward the purchase of any NEW GM
19 VEHICLE in the same manner as it could have been used by the FLEET,
20 provided the transferee is the current owner of the GM PICKUP TRUCK at
21 the time of the purchase of the NEW GM VEHICLE and provides proof of
22 current ownership (registration or title).
8
*512 J28
1 2. For the final 35 months, $250 toward the purchase of
2 a NEW GM VEHICLE when used fay the FLEET named on the FLEET
3 Certificate.
A C. For GOVERNMENTAL ENTITIES, the Certificates shall be
5 usable for a total of fifty months following the mailing of the final notice
6 pursuant to paragraph Vn.7. for the following amounts and «hall only be
7 transferable to other departments or divisions of that GOVERNMENTAL
8 ENTITY, except as provided below:
9 1. For the first 15 months, $1,000 toward the purchase
10 of a NEW GM VEHICLE when used by the GOVERNMENTAL ENTITY
11 named on the GOVERNMENTAL ENTITY Certificate or other departments
12 or divisions of that GOVERNMENTAL ENTITY. The GOVERNMENTAL
13 ENTITY Certificate shall be freely transferable to any purchaser of the
14 GM PICKUP TRUCK identified on the GOVERNMENTAL ENTITY
15 Certificate, except an authorized General Motors deader or its affiliated
16 entities, and may be used by the transferee toward the purchase of any
17 NEW GM VEHICLE in the same manner as it could have been used by
18 the GOVERNMENTAL ENTITY, provided the transferee is the current
19 owner of the GM PICKUP TRUCK at the time of purchase of the NEW GM
20 VEHICLE and provides proof of current ownership (registration or title).
9
*513 129
1 2. For the next 35 months, $250 toward the purchase of
2 a NEW GM VEHICLE when used try the GOVERNMENTAL ENTITY named
3 on the GOVERNMENTAL ENTITY Certificate.
4 D. Alternatively, CONSUMERS, FLEETS and GOVERNMENTAL
5 ENTITIES with CONSUMER Certificates, FLEET Certificates or
6 GOVERNMENTAL ENTITY Certificates (collectively referred to as
7 "Certificate’ or "Certificates’) may sell or transfer their entire interest in
s any or all of their Certificates. In the event of such a sale or transfer,
9 each Certificate may be exchanged for a Third Party Certificate which
10 shall be issued in the name of the person or entity designated on the
11 written request referred to below. The Third Party Certificate may only
12 be used for the unexpired portion of the first 15 months and is not
13 transferable further. Any time that elapses between submission of a
14 request for Third Party Certificate and the issuance shall be excluded
li from the unexpired portion of the first 15 months. To obtain a Third
16 Party Certificate, the Certificate must be sent to an entity or entities,
17 selected by CLASS COUNSEL and General Motors and approved by the
is Court, with a written request that the Third Party Certificate be issued
19 in the name of the designated person or entity. The written request shall
20 state the name and address of the designated person or entity- The
21 charge for issuance of the Third Party Certificate will not exceed $5.00
and will be paid by the party seeking the Third Party Certificate.. The 22

SO

*514 Jjo
1 third party named on the Third Party Certificate may use it toward the
2 purchase of a NEW GM VEHICLE without proof of ownership of a GM
.3 PICKUP TRUCK. The Third Party Certificate may be used for $500
4 toward the purchase of any NEW GM VEHICLE, except that when used,
5 at the user’s election, with any GM rebate and/or discount it may be
6 used for $250 toward the purchase of any NEW GM VEHICLE.
7 E. The following conditions are applicable to all Certificates:
3 1. No trade-in of a GM PICKUP TRUCK is required to
9 purchase a NEW GM VEHICLE with the use a Certificate.
o 2. Certificates may only be used toward the purchase of a
11 NEW GM VEHICLE from an authorized General Motors dealer of that line
12 and make. Any Certificate may be used toward the down payment on the
13 purchase from an authorized General Motors dealer of that line and
M make of a NEW GM VEHICLE. Certificates may not be used toward the
15 rental or lease of NEW GM VEHICLES.
16 3. Holders of Certificates are not required to disclose
17 their intention to use a Certificates toward the purchase oí a NEW GM
1$ VEHICLE until they have made their best deal with the dealer.
19 4. If a NEW GM VEHICLE is ordered by the holder of a
20 Certificate from an authorized GM dealer during the Redemption Period,
21 but General Motors is unable to deliver the vehicle within that period, the
n
*515 1 Certificate will be honored when the NEW GM VEHICLE is purchased at
2 the value of the Certificate at the túne of the order.
3 5. One (I) Certificate will be issued for each GM PICKUP
4 TRUCK owned by the requesting SETTLEMENT CLASS member. Only
5 one (1) Certificate of any kind provided by this Agreement may be applied
6 toward the purchase of each NEW GM VEHICLE.
? 6. No certificates of any kind provided by this Agreement
s may be used by any authorized General Motors dealer or its affiliated
9 entities toward the purchase of any vehicle from General Motors,
to 7. Certificates may be used toward the purchase of any
11 NEW GM VEHICLE from an authorized General Motors dealer of that line
12 and make in addition to any rebate and/or discount otherwise available
13 to the purchaser at the time of the purchase of a NEW GM VEHICLE,
14 except as specifically provided in paragraph 1II.D. of this Agreement.
15 General Motors and CLASS COUNSEL will use their best reasonable
16 efforts to resolve any disputes or problems which may arise with a dealer
17 regarding the redemption of any Certificate.
i« 8. Certificates may not be transferred to authorized
19 General Motors dealers or their affiliated entities during the first 15
20 months, except that Certificates may be redeemed at authorized General
21 Motors dealers as provided in this Agreement.
12
*516 [32
1 IV. SAFETY RESEARCH PROJECT
2 1. The purpose of the Research Project is to research, develop
3 and implement feasible and practical means to enhance fuel system
4 safety for motor vehicles, in order to reduce the incidence of injuries and
s deaths resulting from post-collision fires in existing vehicles and future
6 designs pf passenger vehicles, including cars, light duty trucks and other
7 vehicles used for passenger transportation. The research, development
s and implementation will be directed to enhancing and improving fuel
9 system integrity and reducing or delaying post-collision combustion,
10 prioritizing near term applications. The objective of the Research Project
11 will be to develop and implement successful technology to reduce the
12 incidence of injuries and death resulting from post-collision fuel fed fires
13 in existing and future designs of passenger vehicles. The Research
14 Project will not be directed toward research, development or
is implementation limited to a particular vehicle or line of vehicles, but
16 shall address fuel system safety in a manner applicable to vehicle fuel
17 system safety generally.
18 2. QM is willing to fund the Research Project to promote
19 independent research to enhance fuel system safety for motor vehicles
20 generally as described above. The Research Project is part of the
21 settlement of the claims asserted in the Litigation, which does not resolve
22 any existing or future personal injury or wrongful death actions against
13
*517 Jj3
1 QM, and GM continues to deny any liability whatsoever with respect to
2 the allegations in this litigation end in other existing and any potential
3 litigation involving C/K Pickup Trucks. To assure that the Research
4 Project pursues the mission set forth above, the Research Project shall
5 not in any way involve vehicles (including the components of vehicles}
6 more than 5 years old. Subject to the forgoing restrictions, any advances
7 in motor vehicle fire safety generally resulting from the Research Project
8 may provide potential benefits to owners of C/K Pickup Trucks, as well
9 as other vehicles, but the Research Project itself shall not involve vehicles
10 (including the components of vehicles) more than 5 years old.
11 3, The Research Project shall be conducted under the auspices
12 of an independent Trustee selected by CLASS COUNSEL with the
13 consent of GM’s counsel and approved by the Court. The Trustee shall be
14 an engineer or scientist with expertise in automotive engineering and
15 research or fire suppression technologies who is not an attorney. The
16 Trustee shall not be an individual retained or employed by any
17 consumer advocacy group, any plaintiffs’ or defense attorneys or General
is Motors and/or its grantees. Plaintiffs’ counsel have recommended that
19 Kennedy Digges, Fhd. be appointed as Trustee, and GM has consented.
20 Mr. Digges will serve as the Trustee, subject to Court approval.
21 4. The Trustee will have the responsibility to oversee the
22Research Project, including the responsibility to solicit, identify and
*518 1 select research, testing and implementation projects, administer the
2 funds provided, require written reports, and to arrange for publication or
3 other dissemination of the Research Project results to class members,
4 researchers, engineers and scientists. The Research Project funds shall
5 not be awarded to any individual or entity retained or employed by any
6 consumer advocacy group, any insurance organization, any attorneys or
7 Genera] Motors without the consent of General Motors and CLASS
8 COUNSEL, which consent will not unreasonably be withheld. The
9 Trustee will inform CLASS COUNSEL and GM counsel of the research,
10 testing and implementation projects selected. GM.will not in any way
u discourage researchers or research facilities from doing any work
12 authorized by the Trustee under this Agreement. CLASS COUNSEL or
13 GM msty only object to research, testing and implementation projects
W selected which do not comply with this Agreement. Any such objections
is shall be submitted to the Trustee within IS days from receipt of notice of
16 the project. Review of the Trustees decision may be sought from the
17 Court yrithin 10 days thereafter. The Court's decision will be final and
is shall be followed by the Trustee.
19 5. The Research Project, including the Trustee's fee, shall be
20 funded following the effective date of settlement by General Motors
21 payment of a total of $4.1 million paid in equal annual installments for a
22 period of 3 years. If, in the discretion of the Trustee, the progress of the
15
*519 135
1 research, testing and implementation justifies acceleration of the
2 payments, the Trustee may require, and General Motors will pay, up to
3 one half of the total of the three payments per annum in the first and/or
4 second year of the project In no event shall General Motors’ obligation
s to the fund the Research Project and compensation for the Trustee
6 exceed a total of $4.1 million. The Trustee shall be compensated at a
7 reasonable hourly rate for actual time expended toward the Research
8 Project and reasonable expenses. Compensation and reimbursement of
9 fees and expenses of the Trustee are subject to the above limitations and
10 shall be paid from the fund. Any dispute over the Trustee's
n compensation shall be submitted to the Court for final determination.
12 The patties will apply to the Court for an order granting the Trustee and
13 any recipient of Research Project funding judicial immunity from any
14 actions relating to the Research Project or the results thereof, including,
15 but not. limited to, any applications and benefits thereof.
16 V. DENIAL OF WRONGDOING OR LIABILITY
17 This Agreement is for settlement purposes only, and neither the
U fact of, nor any provision contained in, this Agreement nor any action
19 taken hereunder shall constitute, or be construed as, any admission of
20 the validity of any claim or any fact alleged by Plaintiffs in the litigation
21 or of any wrongdoing, fault, violation of law, or liability of any kind on the
22 part of General Motors or any admission by General Motors of any claim
16
*520 J36
1 or allegation made in any action or proceeding against General Motors.
2 This Agreement shall not be offered or be admissible in evidence against
3 General Motors or cited or referred to in any action or proceeding, except
4 in any action or proceeding brought by or against Plaintiffs,
3 SETTLEMENT CLASS members, or General Motors to enforce its terms,
6 or by General Motors in defense of any claims brought by SETTLEMENT
7 CLASS members covered by this Agreement.
8 VI. certification for settlement purposes only
9 Subject to Court approval, it is agreed by the parties that the
10 Litigation will be deemed, for the purpose of settlement only, to be
u certified as a class action under Louisiana Code of Civil Procedure, and
12 the persons or entities defined in Section II.(k) of this Agreement Bhall be
13 deemed to constitute the SETTLEMENT CLASS on behalf of which the
14 Litigation is settled. Any certification pursuant to this paragraph shall
is not constitute, in this or any other proceeding, an admission by General
is Motors or a finding or evidence that any requirement for class
17 certification is otherwise satisfied in the Litigation, except for the limited
18 purposes related to this Agreement.
19 VII. APPROVAL OF SETTLEMENT
20 I. Plaintiffs’ Counsel and General Motors Counsel shall present
21 this Agreement to the Court on or before July 3, 1996, along with a
22 Motion for Certification of a Settlement Class, Preliminary Approval of
17
*521 [[Image here]]
1 Settlement and Authorization to Disseminate Notice to the Class, in the
2 form attached hereto as Exhibit A, and shall take all appropriate steps to
3 obtain an Order, substantially in the form attached hereto as Exhibit B,
4 (a) finding the settlement sufficiently fair, reasonable, and adequate to
s allow Notice to be disseminated to members of the SETTLEMENT CLASS;
6 (b) certifying the SETTLEMENT CLASS as provided in this Agreement; (c)
7 approving Notice by mail and publication substantially in the forms
s attached hereto as Exhibits C and D; (d) scheduling a hearing on the
9 fairness of the proposed settlement; and (e) appointing CLASS COUNSEL.
10 2. Notice shall be disseminated as directed in that Order
11 (Exhibit B) as follows:
12 (a) Summary Notice of the proposed settlement (Exhibit C)
13 shall be published once in all editions of USA Today distributed in the
14 United States.
is (b) The mailing of the Notice under this Agreement to the
16. SETTLEMENT CLASS members shall be accomplished by delivery of
*17 copies of the Notice, addressed to all SETTLEMENT CLASS members
is whose addresses are found in vehicle registration records maintained by
to R. L. Polk & Co. or other similar entity as of 12:01 AM, July 4, 1996, to
20 the United States Post Office for first class mailing with postage prepaid.
21 Such Notices shall bear the return address of the Post Office Box
22 described in Paragraph X.1.
18
*522 _l38
1 (c) General Motors shall have the sole responsibility for
2 paying fbr the published and mailed Notice to the SETTLEMENT CLASS
3 provided by Paragraph VH.2(a) and (b).
A (d) The Notices shall be printed and mailed by entities
s selected by General Motors. CLASS COUNSEL may object to any entity
6 selected by General Motors to print and mail the Notice. Any dispute
7 regarding the entities selected to print and mail the Notice shall be
8 resolved by the Court, provided that a replacement entity [or entities]
9 shall not be selected if it «ill charge any amount greater than General
10 Motors Would have incurred with the entities it selected for printing and
11 mailing of the Notices.
12 (e) It shall be the responsibility of CLASS COUNSEL to
13 respond to all inquiries from the SETTLEMENT CLASS members as
14 appropriate.
u 3. Subject to Court approval^ any SETTLEMENT CLASS
16 member who intends to request exclusion from the SETTLEMENT CLASS
17 or to object to the fairness of the proposed settlement (hereinafter
is ’requests for exclusion” and "objections to the settlement*) must mail any
19 such request for exclusion or objection to the settlement in writing
20 postmarked within forty-five (45) days of the initial mailing of the Notice
21 pursuant to Paragraph VII.2(b). Requests for exclusion shall be mailed
22 to CLASS COUNSEL, and objections to the settlement are to be mailed to
19
*523 [[Image here]]
1 the Clerk of the Court, at the addresses set forth in the mailed Notices,
2 with copies to CLASS COUNSEL and counsel for General Motors.
3 Persons requesting exclusion and objectors to the settlement must set
4 forth their full name and current address and list the make, model year,
s and vehicle identiGcation number (printed on the envelope/notice) of
6 their vehicle or vehicles. Objectors to the settlement must state in
7 writing all objections and the reasons therefor, and shall include any and
8 all supporting papers, including proof of ownership as of 12:01 AM, July
9 4, 1996, of a GM PICKUP TRUCK, and, if applicable, the objector's
10 statement of intent to appear at the fairness hearing. Any SETTLEMENT
11 CLASS member who does not file timely written objections to the
12 settlement and notice of his or her or its intent to appear at the fairness
13 hearing pursuant to this paragraph and the Notice shall not be permitted
u to object to the settlement at the fairness hearing, and shall be foreclosed
15 from seeking review of the settlement by appeal or otherwise.
16 4. Folio-wing final approval by the Court of this Agreement and
17 the settlement contemplated hereby, the parties shall seek entry of an
18 Order in the form annexed hereto as Exhibit E, dismissing with prejudice
19 and without further costs the Petition, any and all other complaints in
20 the Litigation, and all claims which any SETTLEMENT CLASS members
21 alleged or could have alleged in any way relating to the FUEL SYSTEM
22 DESIGN of the GM PICKUP TRUCKS, excluding only claims for personal
20
*524 Uo
1 injury, death or physical damage to property that have resulted or may
2 result from vehicle fires or crashes.
3 5. Following entry by the Court of the Final Order and
4 Judgment provided for in Paragraph VII.4 of this Agreement, no default
5 by any person other than General Motors in the performance of any
6 covenant or any obligation under this Agreement or any order or
7 judgment entered in connection therewith shall affect the riismiK.yit of
8 the Litigation, the discharge of General Motors, or any other provisions of
9 Paragraph VII.4.
to 6. If (i) the preliminary or final approval of the Agreement and
H the settlement described herein is not obtained or is reversed on appeal
12 (ii) the EFFECTIVE DATE of settlement as defined herein does not
13 occur for any reason or fLii} entry of the Final Order and Judgment
14 described in Paragraph VII.4 is finally reversed or (iv) the judgment is
is substantially modified by the Court, or on appeal, and either CLASS
16 COUNSEL or General Motors so elects, thiB Agreement shall be null and
17 void, shall have no farther force and effect with respect to any party in
is this Litigation, and shall not be offered in evidence or used in the
19 Litigation for any purpose, including the existence, certification or
20 maintenance of any purported class. In such event, the Agreement and
21 all negotiations, proceedings, documents prepared and statements made
22 in connection herewith shall be without prejudice to General Motors and
21
*525 [[Image here]]
1 plaintiffs, shall not be deemed or construed to be an admission or
2 confession by any party of any fact, matter, or proposition of law, and
3 shall not be used in any manner for any purpose, and all parties to the
4 Litigation shall stand in the same position as if this Agreement had not
5 been negotiated, made, or filed with the Court In such event, OeneraJ
6 Motors may elect to move the Court to vacate any and all orders entered
7 by the Court pursuant to the provisions of this Agreement. General
s Motors expressly reserves die right to pursue an appeal of the order
9 certifying a Louisiana litigation class previously entered by the Court or
10 any class subsequently certified CLASS COUNSEL ejfpressly reserve the
11 right to oppose General Motors appeal and to seek certification of the
12 class as stated in Plaintiffs' Motion for Class Certification and any
13 amendments thereto, and/or to seek approval of the trial court to alter or
14 amend the class definition proposed in this Agreement.
li 7. Thirty days following the EFFECTIVE DATE OF
16 SETTLEMENT, the entity or entities selected to print and mail the Notice
n pursuant to paragraph VII.2(d) of this Agreement shall print and mail a
18 final notice to each SETTLEMENT CLASS member in writing, at General
19 Motors expense stating (i) that the Court has given final approval to this
20 Agreement of Settlement and (ii) explaining the procedure and providing
21 Proof of Claim forms for SETTLEMENT CLASS members to obtain
22 Certificates. The form and content of this Notice shall be subject to court
22
*526 Ji2
3 8. CLASS COUNSEL and General Motora shall use their best
4 efforts to obtain Court authorization to disseminate Notice of this
5 Agreement within 14 days after the date of execution of this Agreement.
6 General Motors and CLASS COUNSEL shall use their best efforts to have
7 the Class Notice pursuant to Paragraph VII. 2. mailed within 60 days
i after authorization to disseminate notice is obtained and Summary
9 Notice published within 10 days thereafter. CLASS COUNSEL and
10 counsel for General Motors shall use their best efforts to seek a hearing
11 to obtain final approval of the settlement to be held within sixty-five (65)
12 days following publication of the Notice.
13 VH1. ATTORNEYS FEES AND EXPENSES
M CLASS COUNSEL may apply to the Court for an award of
15 reasonable attorneys* fees, costs and/or expenses for professional
16 services rendered on behalf of the SETTLEMENT CLASS relating to the
17 claims settled, released and discharged by this Agreement under this
13 paragraph and under paragraph X.2. Following preliminary approval of
19 this Agreement by the Court pursuant to paragraph VII., CLASS
20 COUNSEL and General Motors shall negotiate the maximum amount of
21 reasonable attorneys' fees, costs and/or expenses that may be requested
22 by each group of CLASS COUNSEL, subject to reasonable documentation
23
*527 _k
1 and approval of the Court. In the event that limits on the amount of
2 attorneys’ fees, costs and/or expenses that may be requested under this
3 paragraph and paragraph X.2. cannot be negotiated within 40 dayB
4 following preliminary approval by the Court of this Agreement, General
5 Motors may elect to withdraw from this Agreement and this Agreement
« and any actions taken pursuant thereto shall be null and void, shall
7 have np further force and effect with respect to any party in this
8 Litigation, and shall not be offered in evidence or used in the Litigation
9 for any purpose, including the existence, certification or maintenance of
10 any purported class. In such event, the Agreement and all negotiations,
11 proceedings, documents prepared and statements made in connection
12 herewith shall be without prejudice to General Motors and plaintiffs,
13 shall not be deemed or construed to be an admission or confession by
14 any party of any fact, matter, or proposition of law, and shall not be used
15 in any manner for any purpose, and ail parties to the Litigation shall
16 stand in the same position as if this Agreement had not been negotiated,
17 made, or filed with the Court. In such event, General Motors may elect
18 to move the Court to vacate any and all orders entered by the Court
19 pursuant to the provisions of this Agreement General Motors expressly
20 reserves the right to pursue an appeal of the order certifying a Louisiana
21 litigation class previously entered by the Court or any class subsequently
24
*528 144
1 certified, including all issues previously appealed, CLASS COUNSEL
2 expressly reserve the right to oppose General Motors appeal and to seek
3 certification of the class as stated in Plaintiffs' Motion for Class
4 Certification and any amendments thereto, and/or to seek approval of
5 the trial court to alter or amend the class definition proposed in this
6 Agreement. An election to withdraw shall be deemed immediately
7 effective if given in writing by General Motors to CLASS COUNSEL. The
8 negotiated limits on the amount of attorneys’ fees, costs and/or
9 expenses shall be disclosed in the Notice (Exhibit D). In no event shall
10 General Motors be obligated to pay any attorneys’ fees, cost and/or
11 expenses that may be sought by any or all counsel that have represented
12 the SETTLEMENT CLASS in excess of the negotiated limits. General
13 Motors shall have the right and shall have standing to object to any
14 request for attorneys’ fees, costs and/or expenses that it considers
is excessive and may appeal from any excessive award of attorneys’ fees,
16 costs and/or expenses. The amount of attorneys’ fees, costs and/or
17 expenses awarded by the Court in accordance with this paragraph shall
is be paid by General Motors within 14 days following the EFFECTIVE
19 DATE OF SETTLEMENT.
20 IX. RELEASE AND DISMISSAL OF LITIGATION
21 Upon the EFFECTIVE DATE OF SETTLEMENT, conditioned
22 upon its continuing performance of all terms and conditions of this
25
*529 145
1 Agreement and the Final Order and Judgment, General Motors, its
2 present or former officers, directors, employees, agents, attorneys, heirs,
3 executors, administrators, successors, reorganized successors, assigns,
4 subsidiaries, affiliates, parents, divisions, predecessors, and.authorized
s dealers shall forever be released and discharged from any and all claims,
6 whether legal or equitable in nature, that were brought in the Litigation
7 by any SETTLEMENT CLASS member or which could have been asserted
8 in any federal or state court or in any other proceeding by any
9 SETTLEMENT CLASS member (except as to such a member who has filed
to a proper and timely request for exclusion from the SETTLEMENT CLASS)
n arising out of, or in any way relating to the FUEL SYSTEM of the GM
12 PICKUP TRUCKS, excluding past, present, and future claims for
13 damages arising out of any vehicle fires or crashes that result in personal
14 injury, death or physical damage to property.
15 As soon as reasonably practicable following the entry of an Order
16 granting the Motion for Certification of a Settlement Class, Preliminary
17 Approval of Settlement and Authorization to Dissemináte Notice to the
is Class, CLASS COUNSEL and any other attorneys who intend to submit
19 applications for attorneys’ fees, costs and/or expenses under this
20 Agreement shall take all steps necessary to obtain stays of proceeding in
21 all other litigation pending in which CLASS COUNSEL or such other
22 attorneys are involved that involves any claims that will be released
26
*530 _li6
t and/or discharged as a result of final court approval of this Agreement of
2 Settlement. As soon as reasonably practicable following the EFFECTIVE
3 DATE OF SETTLEMENT, CLASS COUNSEL and any attorneys who
4 submit applications for attorneys’ fees, costs and/or expenses shall take
s all appropriate steps to obtain dismissals with prejudice as to all
* SETTLEMENT CLASS Members of any and all litigation that involves any
7 claims released and/or discharged as a result of final court approval of
8 this Agreement of Settlement
9 X. ADMINISTRATION
10 1. CLASS COUNSEL shall be responsible for obtaining a United
It States Post Office Box, for the purpose of receiving requests for exclusion
32 and objections that are submitted in accordance with Exhibit B and D to
13 this Agreement, as well as any other written documents or inquiries
14 submitted by SETTLEMENT CLASS members. CLASS COUNSEL shall
13 make those materials available to the Court, counsel for General Motors
16 and arty member of the SETTLEMENT CLASS who makes a request for
17 inspection, and shall report to the Court about the quantity and nature
is of the materials received, excluding any information protected by the
19 attorney client privilege.
20 2- CLASS COUNSEL shall be entitled to seek reimbursement at
21 CLASS COUNSEL’S customary hourly rates for attorneys’ fees and for
22 actual costs and expenses for services rendered in relation to
27
*531 [[Image here]]
1 SETTLEMENT CLASS notice and administration subsequent to the
2 Court’s entry of an Order preliminarily approving this Agreement,
3 conditionally certifying the SETTLEMENT CLASS and authorising
4 dissemination of the initial class notice pursuant to Section VI(1).
s Reimbursement for these attorneys’ fees, costs and/or expenses shall be
6 subject to Court approval and payable by General Motors as soon as
7 reasonably practicable following the EFFECTIVE DATE OF
5 SETTLEMENT.
9 XI. MISCELLANEOUS
10 1. This Agreement and its attachments shall constitute the
11 entire Agreement of the parties and shall not be subject to any change,
12 modification, amendment, or addition without the express written
13 consent of counsel on behalf of all parties to the Agreement
14 2. This Agreement shall be binding upon and inure to the
15 benefit of the parties hereof and their representative, heirs, successors,
16 and assigns.
17 3. In the event any one or more of the provisions contained in
IS this Agreement shall for any reason be held to be invalid, illegal, or
1$ unenforceable in any respect, such invalidity, illegality, or
20 unenforceability shall not affect any other provision if General Motors
21 and CLASS COUNSEL, on behalf of the parties, mutually elect to proceed *532 as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.
*531 28
*532 [[Image here]]
4. The Court shall retain continuing and exclusive jurisdiction over the parties hereto, including all members of the SETTLEMENT CLASS, and over the administration and enforcement of the Settlement and the benefits to the SETTLEMENT CLASS hereunder. Any disputes or controversies arising with respect to the interpretation, enforcement, or implementation of the settlement must be made by motion to the Court.
5. This Agreement may be executed in counterpart by the parties hereto, and a facsimile signature shall be deemed an original signature for purposes of this Agreement.
6. This Agreement shall be construed under and governed by the laws pf the State of Louisiana.
[[Image here]]
29
*533 [[Image here]]
[[Image here]]
*534 J60
EXHIBIT A
18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE STATE OF LOUISIANA
JOSEPH A. WHITE, ill AND JOHN L. MONSON ANTHONY J. CASHIOLA, SR.
VERSUS
GENERAL MOTORS CORPORATION, BROCKHOEFT’S CHEVROLET, INC.
AND HANKS PONTIAC-GMC-BUICK, INC.
NUMBER 42, 86S DIVISION 'D"
MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, PRELIMINARY APPROVAL OF AGREEMENT OF SETTLEMENT, AND AUTHORIZATION TO DISSEMINATE CLASS NOTICE
Plaintiff*, through undersigned counsel, and pursuant to La. C. Civ. Proc.
Arts. 591, tt seg„ respectfully move for an Order finding the proposed settlement between plaintiffs and General Motors Corporation ('General Motors”) sufficiently fair, reasonable and adequate to allow dissemination of notice to the Class, and providing for the following;
1. Candying a Class, for purposes of settlement, as follows:
All persons and Entities who purchased in the United States (except the United States government) and are owners as of 12:01 AM, July 4,1996, of any of the following vehicles;
(Í) 1973 through 1986 model year General Motors full-aizs pickup trucks or chassis cab models of the *C* or 'K' series. These Include the following models; Chevrolet C10, C20, C30, K10, K20, K30 and GMC Truck Cl 500, C2500, C3500, K1SOO, K2500, K3600;
(ii) 1987 through 1991 model year General Motor* full-size plokup trucks or chassis cab models of the *R* or *V' series. These include the following models; Chevrolet RIO, R20, R30, R2500, R3500, V10, V20, V30, V2600, V3500 end GMC Truck R1500, R2B00, R3500, V1500, V2500, V35G0.
Vehicles that have been scrapped as of 12:01 AM, July 4, 1996, ara not included.
2. Establishing a date for a fairness hearing to consider approval of the settlement and its terms, and any petftlons(a) for an award of attomaya' fees and reimbursement of litigation costs and expenses;
3. Approving the form of Summary Notice of Pendency of Class Action, Proposed Settlement and Hearing ('Summary Notice’) and mailed Notice of *535 Pendency of Close Action, Proposed Settlement and Hearing (“Notice”), and attached as Exhibits C and D to the Agreement of Settlement;
[[Image here]]
4. Authorizing the mailing of Notice to each Settlement Claes member listed, as of 12:01 AM, July 4, 1996; based on registration records maintained by R. L Polk & Company by first class United States mall, postage prepaid;
5. Authorizing publication of the Summary Notice once in all editions of USA Today:
6. Establishing a deadline for the filing of motions and memoranda in support of final approval of the settlement, end petitions(s) for awards of attorneys' fees and reimbursement' of litigation costs and expenses; end
7. Establishing a deadline for filing requests for exclusion from the Settlement Class, for entries of appearance, for filing objections to the settlement, and for responding to objections, if any, to the settlement or petitions(s) for awards of attorneys' fees and reimbursement of costs and expenses.
In support of this Motion, plaintiffs rely on the attached Exhibits and Memorandum in Support of Motion, which are incorporated by reference herein, and the entire record m this proceeding.
This_day of __, 199B.
Respectfully submitted,
ADAMS & REESE
MICHAEL <3. CROW, T.A., NO. 4S26 WILLIAM B. GAUDET, NO. 1374 KAREN L. LEWIS, NO. 1776B MICHAEL M. DURAN,' NO. 1887S ADAMS Si REESE 4500 One Shell Square New Orleans, LA 70139 Telephene: ¡504) 581-3242
PATRICK W. PENDLEY A PROFESSIONAL LAW CORPORATION P. 0. Drawer 71 Ptaquemine, LA 70785-0071 Telephone: ¡5041887-6398
EXHIBIT A PAGE 2
*536 152
PAT M. BARRETT, JR. DON BARRETT EDWARD SANDERS BARRETT LAW OFFICES P. 0. Drawer 631 404 Court Square North Lexington, MS 3909S Telephone: (601) 834-2376
GORDON BALL ATTORNEY AT LAW 750 Natlona Bank Bldg. 650 Watt Main Avenue Knoxville, TN 37802 Telephone: (6IS) 525-7028
COUNSEL FOR PLAINTIFFS
EXHIBIT A PAGE 3
*537 153
EXHIBIT B
18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE STATE OF LOUISIANA
JOSEPH A. WHITE, III AND JOHN L. MONSON ANTHONY J. CASHIOLA, SR.
VERSUS
GENERAL MOTORS CORPORATION, BROCKHOEFT’S CHEVROLET, INC.
AND HANKS PONTfAC-GMC-BUICK, INC.
NUMBER 42, BBS DIVISION 'D'
PRETRIAL ORDER NO.
Plaintiffs and defendant, General Motors Corporation ('General Motors'), have entered Into an Agreement of Settlement to settle the sbove-captioned action, and plaintiffs heve filed a Motion for Certification of a Settlement Class, Preliminary Approval of Settlement and Authorization to Disseminate Class Notice and supporting Memoranda.
AND NOW, this _____ day of , 1996, upon
consideration of the Motion, Memoranda, attached exhibits and argument of counsel:
IT IS HEREBY ORDERED:
1. For purposes of settlement only, pursuant to La. C. Civ. Proc. arts. 591, ef sag., the Court conditionally certifies that this action may proceed as a class action, subject to further reasons that may be stated by the Court In connection with final approval, on behalf of a Class consisting of:
All persons and entitles who purchased in the United States (except the United States government) and ara owners as of 12:01 AM, July 4,1896, of any of the following vehicles:
(i) 1973 through 1886 model year General Motors full-size pickup trucks or chassis cab models of the *C* or 'K* series. These Include the following models: Chevrolet C10, C20, C30, K10, K20, K30 and GMC Truck C1500, C2500, C3500, K1S00, K2SOO, K3500;
(ii) 1987 through 1991 modet year General Motors full-size pickup trucks or chassis cab models of the 'R' or 'V' series. These Include the following models: Chevrolet R10, R20, R30, R2500, R3500, V10, V20, V30, V2500, V3500 and GMC Truck R1600, R2500, R3500, V1500, V2500, V3500.
*538 [[Image here]]
Vehicles that have been scrapped as of 12:01 AM, July 4, 1996, are not included.
2. That the terms of the Agreement of Settlement on behelf of plaintiffs and defendant, General Motors, are sufficiently fair, reasonable and adequate to allow dissemination of the notice of the proposed Agreement of Settlement to the members of the Settlement Class. This determination permitting notice to the Class is not a finding that the Agreement of Settlement is fair, reasonable, and adequate, but simply a determination that there is probable eausa to submit the proposed Agreement of Settlement to the Settlement Class member* and to hold a hearing on final approval of the proposed settlement.
3. Approval Is hereby given to the form and provision* for giving the Summary Notice of Pendency of Class Action, Proposed Settlement and Hearing ('Summary Notice'KExhibit C to the Agreement of Settlement), and Notice of Pendency of Class Action, Proposed Settlement and Hearing ('Notice'HExhibrt D to the Agreement of Settlement). Payment of costs of notification to the Settlement Class members shall be borne by defendant, General Motors.
4. _are appointed as Class Counsel for the Settlement Class.
5. Class Counsel and General Motors shall proceed to negotiate appropriate procedures for the determination of reasonable attorneys' fees, cost and expenses that may foe sought by Clets Counsel. The procedures shall include the amount that any requests for attorneys’ fees, cost and expenses shall not exceed and those amounts shall be included In the Notice. The procedures negotiated hereunder shall be subject to approval by the Court. In the event that the parties cannot negotiate acceptable procedures hereunder, GM may elect to withdraw from the Agreement of Settlement, and the Agreement of Settlement will be deemed null and void and of no force end effect whatsoever, this Order shatl be deemed vacated and the parties shatl be returned to their positions as if the Agreement of Settlement had not existed and this Order had not been entered.
6. Within 60 days entry of this Order, defendant General Motors shell mail the Notice in substantially the same form as that attached as Exhibit 0 to the Agreement of Settlement, by first class United States mail, postage prepaid, to each Settlement Class Member whose name and address appear In vehicle registration records maintained by R. L. Polk & Co. as of 12:01 AM, July 4,1996.
EXHIBIT a PASE 2
*539 [[Image here]]
7. Ten (10) day* following the mailing of the Notice pursuant to paragraph 6 of this Order, defendant General Motors shell cause the Summary Notice, in substantially the same form as that attached as Exhibit C to the Agreement of Settlement, to be published once In all editions of USA Today distributed in the United States.
8. Motions and Memoranda in support of final approval of the proposed settlement shall be filed 21 days prist to the hearing on final approval of the settlement.
9. The patition(s) for an award of attorneys' feet and reimbursement of litigation coats and expenses shad be filed 21 days prior to the hearing on final approval of the settlement.
10. Requests for exclusion from the Settlement Class shell be postmarked on or before October_, 1996, to a Post Office Box to ba obtained by Class Counsel and identified in the Notice. Persons requesting exclusion must set forth their full nema and currant address and list the make, model year, and vehicle identification number of their vehiclals).
11. A Post Office Box will be established by Class Counsel for the purpose of receiving and responding to inquiries by Settlement Class members.
12. Entries of Appearance, if any, by attorneys on behalf of Settlement Class members shall be filed with the Clerk of the Court and served on Don Barrett, Esquire, lead counsel for the Settlement Class at his address set forth In Paragraph
13,below, on or before October_, 1996. Clast Counsel shall promptly provide copies to Jeffrey A. Rosen, Esquire, counsel for General Motors.
13. Any objections to the proposed settlement, or to any petitions for attorneys' fees and reimbursement of litigation costa and expanses, shall be filed and served on or before October _, 1BSB. Any objection must ba made In writing and include a statement of the position to be asserted, the grounds therefor, together with copies of any supporting papers or briefs and proof of membership in the Settlement Clesa (such as a true copy of the vehicle title, registration, or license receipt), and if such parson wishes to appear at the hearing, a notice of Intention to _ appear, with proof of service upon the following counsel:
Don Barrett Barrett Law Offices P.O. Box_
EXHIBITS PAGE 3
*540 156
One Shell Square New Orleans, LA 70139
Leed Counsel for Plaintiffs and the Settlement Class
Any objecting Settlement Class member may appear at the hearing in person or by counsel and show cause why the proposed settlement should not be approved as fair, reasoneble, and adequate, or object to any petitions for attorneys' fees and reimbursement of litigation costs and expenses provided that he, aha or it has complied with the procedure set forth above.
14. Memoranda in response to any objection to the proposed settlement, or to the petition for attorneys' fees or reimbursement of litigation costa and expenses shall be filed and served on or before the date of the fairness hearing.
15. A hearing shall be held on October_, 1996, at 9:30 a.m. before the undersigned in Courtroom ______ at the_, for the purpose of determining whether the proposed settlement is fair, reasonable, and adequate and should be approved by the Court, the Settlement Class should be certified pursuant to La. C. Chr. Proc. arts. 591, ef seq., and the amount of attorneys' fees and reimbursement of litigation costs and expenses that should be awarded to Cless Counsel.
JUDGE JACK T. MARIONNEAUX
EXHIBITS PAGE 4
*541 _k?
EXHIBIT C
18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE STATE OF LOUISIANA
JOSEPH A. WHITE, III AND JOHN L. MONSON ANTHONY J. CASHIOLA, SR.
VERSUS
GENERAL MOTORS CORPORATION, BROCKHOEFT’S CHEVROLET, INC.
AND HANKS PONTIAC-GMC-BUICK, INC.
NUMBER 42, BBS DIVISION *D*
SUMMARY NOTICE OF PENDENCY OF CUSS ACTION. JBPFPSED.SEirLEMENT AND, HEARING
TO: Tha members of tha ‘Sattiamant Class', which includes all persons and antltlaa (except tht Unittd Stataa government) who purchaied in tha Unitad Statat and ata owner» aa 12:01 AM, July 4,1896, of any of tha following vehicle»:
(i| one or mora 1973 through 1986 modal year Ganaral Motor» full-tiis pickup truck or chatii» cab model» of the ‘C* or 'K* caria». Theta Include tha following modal»: Chevrolet C10, C20, C30, K10, K20, K30 and GMC Truck C1S00, C2600, C3500, K1S00, K2500, K3S00;
lii) on» or more 1987 through 1991 model year Ganaral Motors full-site pickup tuck or chat»!» cab modela of the “R* or “V” caria». The»» include tha following model»: Chevrolet R10, R20, R30, R2SOO, R3B00, V10, V20, V30, V2BOO, V3SOO and GMC Truck R1S00, R2B00. R3SOO, V1B00, V2B00, V3B00;
Vehicles that have been scrapped ara not included.
You may ba In tha clac» of people defined above (‘Settlement Class*) covered by e proposed settlement of this clast action, end you may be entitled to receive the benefit» of a proposed settlement of this litigation. Detailed Notices which describe tha Etigation, settlement term», conditions and benefits have been mailed to persons and entitles who are within the Settlement Class according to registration records maintained by R. L. Polk & Co.
If you ara a Settlement Class member end you did not receive a mailed Notice, you may receive one free of charge and receive any future court notices by writing immediately to GM Class Counsel, P.O. Box_, One Shell Square, New Orleans, Louisiana 70139. When writing to GM Class Counsel, you should *542 include your name, address, and vehicle identification number and, if possible, attach a copy of your vehicle title or registration.
[[Image here]]
On October_, 1996, at_a.m., Judge Jack T. Marionneaux of this Court will hold a hearing In Plaquemine, Louisiana, to decide whether to approve the settlement and dismiss the lawsuit. The mailed Notice Includes additional details about the hearing, the proposed settlement, the class certification, end the legal rights of Settlement Class members. All Settlement Class members will be bound by the Orders of the Court.
THIS NOTICE IS ONLY A SUMMARY, Do not call the Clerk of the Court for additionel Information. Additional information can be found in the mailed Notice, which may be obtained as stated above.
Dated:_, 1996.
BY ORDER OF THE COURT
Clerk, 18th Judicial District Court for the Parish of Iberville
EXHIBIT c PAGE 2
*543 J59
EXHIBIT D
18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE STATE OF LOUISIANA
JOSEPH A. WHITE, III AND JOHN L. MONSON ANTHONY J. CASHIOLA, SR.
VERSUS
GENERAL MOTORS CORPORATION. BROCKHOEFT'S CHEVROLET, INC.
AND HANKS PONTIAC-GMC-BUICK, INC.
NUMBER 42. 865 DIVISION *D"
NOTICE OF PENDENCY OF CUSS ACTION,
PROPOSED SETTLEMENT AND HEARING
TO: The member* of the "Settlement Clee*', which include* alt person* or entities (except the United States government) who purchased in the United States and ere owners as 12:01 AM, July 4, 1896, of any of the following vehicles:
(i) one or more 1873 through 1986 model year General Motors full-size pickup truck or chassis cab models of the *C" or "K" series. 7116*6 include the following models: Chevrolet CIO, C20, C30, K10, K20, K30 and GMC Truck C1S00, C2S00, C3500, K1500, K2600, K3600;
(ii) one or more 1987 through 1991 model year General Motors full-size pickup truck or chassis cab models of the "R* or "V" series. These include the following models: Chevrolet R10, R20, R30, R2500, R3E00, V10, V20, V30, V2500, V3S00 and GMC Truck R1500, R2500, R3500, VI600, V2500, V3500;
The vehicles listed above are referred to In this Netiee as *GM Pickup Trucks." Vehicles that have been scrapped as of 12:01 AM, July 4, 1996, are not included.
■’ou may be in the class of people defined above ("Settlement Class') covered by a proposed settlement of this cíese action, which has been conditionally certified as a dess action for purposes of providing this Notice to the Settlement Class and consideration of the fairness, adequacy and reBsonebienasa of the settlement. Members of the Settlement Class will be entitled to receive the benefits of a proposed settlement if the settlement ie approved.
No cleims for personal injury, wrongful death, or damage to property resulting from vehicle fire* or crashes are being compromised or dismissed in the Settlement.
*544 _k°
I. mEUIlBAIlflM
A class action lawsuit It pending in this Court that may affect your legal Interests. A clast action is a lawsuit broght by one or more persons an behalf of others similarly situated. Claims are asserted in an Amended Class Action Petition against General Motors Corporation in Louisiana which alleges that the outside the frame rail fuel tanks on the GM Pickup Trucks listed above constitute a defect and sacks compensation as a result. Gansrai Motors denies the existence of a defect, wrongdoing, and any liability whatsoever. The Court hsa decided that the case can proceed as a class action for purposes of settlement of this lawsuit, but this does not mean that the Plaintiffs would be successful If the casa went to trial. The Settlement Class consists of three separate subclasses - Consumers, Fleets and Governmental Entities. Consumers ara Settlement Class members who are not Fleets or Governmental Entitles. Fleets era Settlement Class members owning three or more GM Pickup Trucks, excluding Governmental Entities. Governmental Entities ere sny governmental unit, including but not limited to cities, stetes, counties, parishes, municipalities, townships or any subdivisions or agencies thereof, which own one or mors GM Pickup Trucks, excluding the United Stetes govsmment.
There are other lawsuits pending in federal and state courts that make similar defect allegations and contain various claims for damages and equitable rtiief. The federal court actions are eonsolidstsd as In re General Motors Corporation Pickun Truck-Fuel Tank Product Liablitv Utioatlon. MOL 961 In federal court In Philadelphia, Pannsylvania. A state court in Georgia certified a statewide class in Jack White, et al v. -General Motors ..Corporation. No. 93-CV-17504-1, Superior Court, Floyd County. Approval of a prior class settlement by the federal court and a Texas state court in Dollar, at al v. General Motors Corporation. No. 92-1089. 71st Judicial District Court was reversed on tppatl.
The Court has made no determination, and this Notice and the proposed settlement do not imply, thet there was a defect in the fuel eystem or thit General Motors violated any law.
9. THE .SETTLEMENT
General Motors and Class Counsel for tha Settlement Cfass have agreed to a proposed settlement which provides that:
EXHIBIT D PAGE 2
*545 [[Image here]]
• Upon receipt of a timely Proof of Claim, General Motora shell issue to each Settlement Class member for each GM Pickup Truck owned a Certificate toward the purchase of any new and unused GM light duty truck or automobile, Including Chevrolet, Geo, GMC Truck, Bulck, Oldtmobile, Pontiac and Cadillac models (excluding Saturn or electric powered vehicles) ("New GM Vehicles').
• Certificates for Consumers may be used by the Consumer or any parent, child, sibling or spouse of the Consumer, who is residing within the tame household as the Consumer at the time the Certificate is used. Consumers' Certificates may ba applied to the purchase of a New GM Vehicle at any time within 33 months after the date notice of final court approval of the settlement Is mailed ('Consumer Redemption Period’). Consumer Certificates will be usable for * 1,000 toward the purchase of a New GM Vehlele during the first 15 months of the Consumer Redemption Period. The Consumer Certificate shall be frsely transferable to any purchaser of the GM Pickup Truck Identified on the Consumer Certificate, except an authorized General Motors dealer or its affiliated entitles during the first IS months. It may be used by the transferee as it would be used by the Consumer, provided the transferee is the current owner of the GM Pickup Truck at the time and provides proof of current ownership (registration or title). The Consumer Certificate is usable for S500 toward the purchase of a New GM Vehicle during the final 18 months of the Consumer Redemption Period when used by the Consumer named on the Certificate. Curing the final 18 months of the Consumer Redemption Period, the Consumer Certificates shell be freely transferable following endorsement by the Consumer, and la usable for $260 toward the purchase of any New GM Vehicle by the transferee, except it may not be used by s General Motors dealer or its affiliate to purchase any vehicle from General Motors.
• Certificates for Fleets and Governmental Entitles may be applied by the Fleet or Governmental Entity toward the purchase of a New GM Vehicle at any time within SO months after date of notice of final court approval of the settlement is mellad (hereafter the 'Fleet or Governmentel Entity *546 Redemption Period"). This Fleet or Governmental Entity Certificate is usable by the Fleet or Governmental Entity nemed on the Certificate for 11,000 towards the purchase of a New GM Vehicle during the first 15 months of the Fleet or Governmental Entity Redemption Period. The Fleet or Governmental Entity Certificate shall be freely transferable to any purchaser of the GM Pickup Truck identified on the Fleet or Governmental Entity Certificate, except on authorized General Motors dealer or its affiliated entities during the first 15 months, ft may be used by the transferee as it would be used by the Fleet or Governmental Entity, provided the transferee is the currant owner of the GM Pickup Truck at the time and provides proof of current ownership (registration or title). The Fleet or Governmental Entity Certificate is usable by the Fleet or Governmental Entity nemed on the Certificate for $250 toward the purchase of a New GM Vehicle during the final 35 months of the Fleet or Governmental Entity Redemption Period. Governmental Entity Certificates may be used by any other departments or divisions of that Governmental Entity.
*545 exhibit o
PAGE 3
*546 [[Image here]]
• Alternatively, Consumers, Fleets end Governmental Entities may sell c transfer their entire interest in any or all of their Certificates without the sale of the GM PICKUP TRUCK. In the event of such a sale or transfer, each Certificate may be exchanged for a "Third Party Certificate", which shell be Issued in the neme of the person or entity designated. This Third Party Certificate may be usad for the unexpired portion of the first 15 months of any Redemption Period and is not transferable further. Any time that elapses between submission of a request for a Third Party Certificate and the issuance shell be excluded from the unexpired portion of the fust 15 months. The party designated on the Third Party Certificate may use it for $500 toward the purchase of any New GM Vehicle from an authorized dealer of that line end make, except that when used, at the user's election, with any rebate end/or discount it may be used for $250 toward the purchase of any New GM Vehicle.
• Settlement Clast members are not required to disclose their intention to use a Certificate toward the purchase of a New GM Vehicle until they *547 have made their best deal with the dealer. The Certificates may be' used in addition to any incentives otherwise available to the purchaser at the time of the purchase of a New GM Vehicle, except for the Third Party Certificates as explained above.
*546 EXHiarr d
pages
*547 [[Image here]]
• If a New GM Vehicle is ordered by . any Certificate holder from an authorized GM dealer during the applicable Redemption Period, but General Motors ia unable to deliver the vehicle within that period, the certificate will be honored at the time of delivery of that New GM Vehicle.
• Only one (1) Certificate of any kind may be applied toward the purchase of each New GM Vehicle. A Certificate may only be used toward the purchase of a Naw GM Vehicle from an authorized General Motors dealer of that line and make. Any Certificate may be used toward the down payment on the purchase. Certificates may not be used toward the rental or lease of New GM Vehicles. No trade-in of a GM Pickup Truck ia required to purchase a New GM Vehicle with the use of a Certificate.
• No Certificates of any kind may be used by any authorized General Motors dealer or its affiliated entities toward the purchase of any vehicle from General Motors, and during the first 16 months of any Redemption Period, no Certificates may be transferred to any authorized General Motors dealer or its affiliated entities except for purposes of redemption.
• A Research Project will be established to research, develop and implement feasible and practical means to enhance fuel system safety for motor vehicles, in order to reduce tita incidence of injuries and deaths resulting from post-collision fires in existing vehicles and future designs. General Motors will fund ths Research Project with (4.1 million over three years which wilt be administered by an independent trustee.
AS SOON AS REASONABLY PRACTICABLE AFTER THE EFFECTIVE DATE OF SETTLEMENT, GENERAL MOTORS WILL NOTIFY SETTLEMENT CLASS MEMBERS THAT THE COURT HAS GIVEN FINAL SETTLEMENT APPROVAL, AND WILL EXPLAIN THE PROCEDURE AND PROVIDE THE PROOF OF CLAIM *548 FORMS FOR THE SETTLEMENT CUSS MEMBERS TO OBTAIN CERTIFICATES. THE CONSUMER, FLEET AND GOVERNMENTAL ENTITY REDEMPTION PERIODS WILL START ON THE DATE THAT NOTICE IS GIVEN BY GENERAL MOTORS.
*547 EXHIBIT D PASES
*548 [[Image here]]
HI. CLASS COUNSEL
Th» Court has designated aa Clac Rapreaematives to rapratcnt all Sattlamant Claaa mambara. Tha Court haa atao designated at Clac Counaal . The Clac Repreaantatlvet and Claaa Countal believe that tha proposed sattlamant la fair, reasonable, and adequate. Counsel for tha Settlement Claaa have entered Into tha proposed sattlamant after weighing tha substantial benefits against tha probabilities of auccaaa or failure and the long delays that would be likely if tha ease proceeded to trial.
Class Countal will not request attorneys' fees, costa and expenses in axcess of $_. Tha amount of attorneys’ fee, coats and axpansaa for Class Counsel not In excess of the requested amount will be determined by the Court end will be paid by General Motors. General Motors has tha right to object to any request that it deems unreasonable and may appeal from an unreasonable award by the Court.
You may address any specific questions concerning this Notice to Class Counsel in writing by mail to GM Sattlamant Class Counsel, P.O. Box Ona Shell Square, New Orleans, LA 70139.
IV. BIGHTS AND OPTIONS OF. CUSS MEMBERS
If you are a Sattlamant Oats member, you have tha following options:
1. You mav do nothing and remain a Sattlamant Class member. If you choose to take no action, your interests as a member of tha class will be representad by tha class representativas and Class Counsel. You will not ba charged for their services. You will be bound by any judgment or other final disposition of the litigation and may participate as a member of the Settlement Cleat in this settlement.
2. You may remain a Settlement Class member and hire vour own attorney to reoresent you at vour own cost. Your attorney muet file an Entry of Appearance with the Clerk of tha Court, 18th Judicial *549 District Court, Parish of tbsrvllle, 600 Mariam Street, P. O. Box 423, Plaquemine, Louisiana 70764, and send a copy to Class Counsel and General Motors identified in this Notice. An Entry of Appearance must be filed by_
*548 EXKmrro FASE 6
*549 165
3. You may reouest exclusion from the Settlement Class. If you elect to be excluded from the Settlement Claes, you will not be bound by any Judgment disposition, or settlement of the class action, nor may you participate in the eattlement of this dess action. You will retain, and will be free to pursue, any claims you may have on your own behalf. If you wieh to exclude yourself from the Settlement Clase, you must mail a request for exclusion to the following address:
Clerk of the Court c/o GM Settlement Class Counsel P. 0. Box 423 One Shell Squere New Orleans, Louisiana 70139
Exclusion requests must set forth the full nema and address of the person seeking exclusion and the make, model year end vehicle identification number (*VIN*| of the GM Pickup Trucktsl owned, and specifically state that the person requests exclusion from the Settlement Class in Joseph A. White, III. et el v. Genera! Motors Corporation, et el.. Number 2,865, Division *D'. The written request for exclusion requests must be postmarked by October_, 1996.
4. Vnn mnv object to the Battlement. Any Settlement Clast member who does not elect exclusion from the Settlement Class and who objects to ths proposed settlement must mad such objection end any supporting papers to the following address:
Clerk of the Court 16th Judicial District Court Parish of Iberville P. 0. Box_ Plaquemine, Louisiana 70764
The objection must list the make, model year, and vehicle identification number of the vehicle or vehicles owned, and Include proof of ownership (such et title, registration, or license receipt) and be postmarked on or before October_, 1996. If the person filing the objection Intends to appear personally at the idatel formal fairness *550 hearing, the objection mutt to state in writing. Any Settlement Class member who doet not file objections In the time and manner detcribed above it forever foreclosed from raising any objection to such matters. Copies of all objections mailed to the Clerk of Court must be sent to the GM Settlement Class Counsel at the address fisted above.
*549 EXHIBIT D PAGE 7
*550 [[Image here]]
V. gAlBHESS.HEABMO
On . e hearing will be held In ■ 1Bth Judicial District Court, Perish of Iberville, 600 Mariam Street, Plaquamlne, Louisiana 70764, for the purpose of determining whether the proposed eettlement is fair, reasonable, end adequate and should be approved and the lawsuit dismissed. The hearing may be continued without further notice.
VI. EFFECT-OP SETTLEMENT APPROVAL
If the settlement is approved, it will be binding and end any end all claims, including any claims for damages or equitable relief of any nature, that Settlement Class members made or could hava made arising out of or In any way related to the fuel system design of the GM Pickup Trucks, which includes the design, manufacture end placement of the fuel tanks outside the frama rails and all related fuel system designs end components, including fuel lines, fuel pumps, fuel filler neck, fill cap, fuel tank shields, attachment devices, and surrounding structure and components. The settlement does nal release, dismiss or effect any pest,' present or future claims for damages arising out of any vehicle fires or crashes that result in personal injury, wrongful death, or damage to property. Following approval of the settlement, dismissal of the other litigation described above will ba sought.
EXHIBIT D PAGES
*551 I 67
VII. Eg.RJMDRE..INF0RMAT10N
This Notice li only a summery. The full Agreement of Settlement. Amended , and other documents in the case may be Inspected and copied at the Clerk's Office, 18th Judicial District Court, Perish of Iberville, 600 Merlem Street, P. O. Box 423, Plaquemlne, Louisiana 70764. Dp ,npl,.wrtt6.pfJalBBhane the Clerk's Office H you have any questions about thia Notice or the settlement. Address any questions regarding this Notice or the proposed settlement In writing to GM Settlement Class Counselat the address listed above.
Plaquemlne, Louisiana
DATED:_, 1996
BV ORDER OF THE COURT
18th Judicial District Court Parish of Iberville 600 Meriam Street P. 0. Box 423 Plaquemlne, Louisiana 70764
EXHIBIT D PAGES
*552 _Í68
EXHIBIT E
18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE STATE OF LOUISIANA
JOSEPH A. WHITE, ill AND JOHN L. MONSON ANTHONY J. CASHIOLA, SR.
VERSUS
GENERAL MOTORS CORPORATION, BROKHOEFTS CHEVROLET. INC.
AND HANKS P0NTIAC-6MC-BUICK, INC.
NUMBER 42,865 DIVISION *0*
FINAL ORDER AND JUDGMENT
Having considerad the Agreement of Settlement dated June 27, 1B96, including the exhibits annexed thereto ('’Agreement'); the Class Action Settlement Notice ("Notice") having been duly given in accordance with the prior Order of this Court; a formal hearing having been duly noticed on June_, 1396, and a hearing having been held on__, for the purpose of determining whether the terms of the Agreement are fair, reasonable, and adequate and should be approved by the Court in full settlement of the above-captioned litigation; having heard the attorneys for the parties In support of the Agreement and having considered any objections submitted to the Court; and bated upon all papers filed and proceedings had herein; and good cause having been demonstrated to this Court's satisfaction under the standards of La. Code. Civ. Proc. arts. 591, at scq., and pursuant to the reasons for judgment separately stated by the Court:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:
1. The Court hereby approves the terms of the Agreement, attached hereto as Exhibit "A" and incorporated heroin for all purposes, ee fair, reasonable, and adequate and directs consummation of sil its terms and provialons.
2. Direct mail notice has been given to an Settlement Class members known and reasonably idamifisblt, with supplemental notice by publication, which is tha best notice practicable In satisfaction of the requirements of La. C. Civ. Proc, art. 594, and due proctss.
3. The prior conditional certification of the Settlement Clisa it hereby confirmed and the Settlement Class Is certified pursuant to La. C. Civ. Proc. art. 594 for purposes of the Settlement epprovod by this Order. The Settlement Class is defined as:
All parsons and entities who purchased In the United States and ere ownors os 12:01 AM, July 4, 1996, of any of the following vehicles:
(l| one or more 1973 through 1986 model year General Motors full-size pickup truck or chassis cab models of the "C* or "K" series. These include the following models: Chevrolet CIO, *553 C20, C3G, K10, K20, K30 end GMC Truck C1500, C2500, C3E00, K1B00, K2500, K3500;
[[Image here]]
(¡I) one or more 1937 through 1391 model year General Motors full-elze pickup truck or chassis ceb models of the "FT or *V* series. These Include the following models'. Chevrolet R10, R20, R30, R2500, R3500, V10, V20, V30, V2600, V3600 end GMC Truck R1500, R2500, R3S00, V1S00, V2800, V3500;
Vehicles that have been scrapped as of 12:01 AM, July 4,1996, are not Included.
4. The action Is dismissed on the merits with prejudice as to all Settlement Class members who did not request exclusion from the Settlement Class In the time and manner provided In the Notice, without costs to any party. General Motors Corporation ("General Motors"), its present or former officers, directors, employees, agents, attorneys, heir*, executors, administrators, successors, reorganized successors, assigns, subsidiaries, affiliates, parents, divisions, predecessors, end authorized dealers shall be, end the same hereby are. released and discharged from any and all claims, causes of action, and liability whatsoever alleged or asserted or which could have been alleged or asserted In this lewsuit or in any other lawsuit purportedly brought on on behalf of Settlement Class members arising out of, or in any way relating to the design, manufacture, assembly, distribution, marketing, tales or service of the fuel system, including but not limited to, the fuel tanks and all related fuel system designs and components, Including fuel lines, fuel pumps, fuel filler neck, fill cap, fuel tank shields, attachment devices, and surrounding structure and components in the GM Pickup Trucks, excluding claims for damages arising out of any vehicle fires or crashes that result In personal injury, death, or damage to property. Nothing contained In the Agreement or in this Final Order end Judgment shall be deemed an admission or finding of wrongdoing by, or with respect to, any party.
5. General Motors shall notify all members of the Settlement Class by first dess United States mail, postage paid, (i) that the Court has given final approval to the Agreement and (Hi explaining the procedure and providing Proof of Claim forms for the Settlement Class members to obtain Certificates.
6. All members of the Settlement Clase who did not duty request exclusion from the Settlement Class in ths time and manner provided in the Notice are hereby barred, permanently enjoined, and restrained from commencing or prosecuting sny action, suit, proceeding, claim, or cause of action in any Jurisdiction or court against General Motors Corporation or any of tht other entitles or parsons who era to ba discharged es provided above In Paragraph 4, based upon, relating to, or rising out of, any of the matters which are discharged end released pursuant to Paragraph 4 hereof.
7. The claims of Settlement Class members who elected to be excluded from the Settlement Class in the timo and manner provided in the Notice are dismissed without prejudice.
EXHIBIT E PASE 2
*554 8. If the effective date of settlement, ae defined the Agreement, does not occur for any reasons whatsoever, this Fine! Order and Judgment shell be deemed vacated and shall have no force and effect whatsoever.
9. In the event that this Court's final approval of the Agreement and Final Order and Judgment are reverted or set aside for any reason, this Final Order and Judgment and the certification of the data for settlement purposes shell be vacated and the case returned to the Court of Appeals for further proceedings on General Motors' appeal on the Issues relating to vanua and certification of the Louisiana class.
to. Without affecting the finality of the Final Order and Judgment In any way, the Court reserves continuing and exclusive Jurisdiction over the parties, including all members of the Settlement Clsss as defined above, and the execution, consummation, administration, and enforcement of the terms of the Agreement.
11. There being no Just reason for delay, the Clerk Is directed to enter this Final Order and Judgment forthwith.
DATED:.
JACK T. MARIONNEAUX, J.
EXHIBIT E PAGE 3

. The history of how the nationwide class action settlement ultimately came to the Louisiana court system is set forth in In Re: General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation, 134 F.3d 133, 138-139 (3rd Cir.1998), and in White, 718 So.2d at 482-486.

. We note that the fairness of the settlement agreement to the settlement class members and the awards for attorney fees and costs are not at issue before this court.

. The "settlement class” is defined in the settlement agreement as "All CONSUMERS, FLEETS and GOVERNMENTAL ENTITIES who purchased in the United States and are owners as of 12:01 AM, July 4, 1996, of one or more GM PICKUP TRUCKS.” The settlement agreement does not bind persons or entities who submit a request for exclusion from the settlement class within the proper time. The settlement agreement further provides the following pertinent definitions:
"CONSUMER” shall mean any SETTLEMENT CLASS member owning one or two GM PICKUP TRUCKS and shall include any parent, child, sibling or spouse of a CONSUMER, who is residing within the same household as the CONSUMER at the time the CERTIFICATE is used.
"FLEET” shall mean any SETTLEMENT CLASS member which is either a person or entity owning three or more GM PICKUP TRUCKS, except a GOVERNMENTAL ENTITY or the United States government.
"GOVERNMENTAL ENTITY” shall mean any governmental unit, including, but not limited to cities, states, counties, parishes, municipalities, townships or any subdivisions or agencies thereof, and shall also include any governmental unit known by any other name, regardless of the number of GM PICKUP TRUCKS owned, except for the United States government.

.The settlement agreement defines "GM PICKUP TRUCK[S]” as:
(i) 1973 through 1986 model year General Motors full-size pickup truck or chassis cab models of the "C” or "K” series which include the following models: Chevrolet CIO, C20, C30, K10, K20, K30 and GMC Truck C1500, C2500, C3500, K1500, K2500, K3500, and
ii) 1987 through 1991 model year General Motors full-size pickup truck or chassis cab models of the "R” or "V” series, which include the following models: Chevrolet *495 R10, R20, R30, R2500, R3500, VIO, V20, V30, V2500, V3500 and GMC Truck R1500, R2500, R3500, V1500, V2500 and V3500. GM Pickup Trucks that have been scrapped are not included.

. The settlement agreement defines "NEW GM VEHICLE” as:
any new and unused General Motors light truck or automobile, which include[s] Chevrolet, Geo, GMC Truck, Buick, Oldsmobile, Pontiac and Cadillac models. NEW GM VEHICLE shall not include Saturn models or electric powered vehicles.

. The “purchaser” may not include "an authorized General Motors dealer or its affiliated entities.”

. The details of the benefits to the class members are set forth in Section III of the settlement agreement, titled Benefits to Settlement Class Members.” The entire settlement agreement is set forth in Appendix A to this opinion.

. When combined with any GM rebate and/or discount, the third party certificate is worth $250.00, rather than $500.00.

. The settlement agreement indicates that the release from liability applies to GMC, as well as "its present or former officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors, reorganized successors, assigns, subsidiaries, affiliates, parents, divisions, predecessors, and authorized dealers.”

. As represented by Class counsel at the hearing, a group of Class counsel proposed to pay the costs of the inclusion of the business reply envelope and the cash option letter in the mail-out.

. At the May 24, 1999 hearing, the cash option letter introduced into evidence provided the cash option was worth $88.00. However, at the June 18, 1999 hearing, Class counsel substituted the exhibit with another indicating the cash option was $100.00, rather than $88.00. The pertinent language of the cash option letter reads:
For the benefit of Class Members who feel they are unlikely to purchase a new GM vehicle themselves, Class counsel has arranged a court-approved offer for you to sell or transfer your interests in your Certificate. If you exercise the "Cash Option” by XX/XXXXX, you will receive a check for $100.00 from Certificate Redemption Group, L.L.C. ("CRG”) issued on Chase Bank of Texas, N.A. ("Chase”). The Certificate will be issued and held in escrow by Chase until funds have been deposited with Chase to pay for your interests in your Certificate.

. Although Class counsel refers to an affidavit of William F. Ryan, “one of the principals of ICMC investors," in which details are apparently given regarding this entity’s offer to buy certificates, no such affidavit was found in the appellate record.

. The record does contain a letter dated May 23, 1999, from James R. Dawley, Manager of CRG, addressed to Mr. Michael G. Crow, in which reference is made to CRG’s "proposal to assist Class counsel in making a secondary market in the GM side-saddle class action.”

. After the federal court set aside the settlement agreement in 1995 in In re: General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3rd Cir.1995), cert. denied, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995), Class counsel entered into a "Certificate Transfer Agreement” dated October 24, 1996, with the Public Citizen Litigation Group, and its clients, whereby Class counsel agreed to create or stimulate the secondary market for certificates, by placing $10 million of the approximate $24 million attorney fee award Class counsel would receive from GMC into an escrow fund to be used to purchase consumer certificates. The fund was to be used “to the extent that other market makers have not come forward within 180 days after the Settlement becomes final and made irrevocable offers to purchase at least 100,000 certificates.” According to Class counsel’s June 8, 1999 letter to counsel for GMC, CRG’s agreement to reimburse Class counsel $1.55 million was conditioned upon an agreement being reached in connection with CRG’s ability to use all or a portion of the $10 million escrow fund to buy the certificates.

. When GMC sought to appeal the June 21, 1999 order, the trial court refused to grant'a suspensive appeal. GMC sought supervisory writs with this court to stay the proceedings below and to seek a suspensive appeal. On July 15, 1999, this court granted GMC’s writ. Joseph A. White, III, et al. v. General Motors Corporation, 99 CW 1599 (La.App. 1 Cir. 7/15/99). (R1104) The ruling stated:
WRIT GRANTED. The trial court’s ruling of June 25, 1999, denying [GMC’s] motion for suspensive appeal hereby is reversed and judgment is rendered in [GMC’s] favor, granting [GMC] a suspen-sive appeal of all orders issued by the Court on June 21, 1999, upon [GMC’s] furnishing legally acceptable security in the amount of $30,000Y. The trial court’s June 21, 1999, order is a judgment that is subject to a suspensive appeal. La.Code Civ. P. art. 2083. The case is remanded to the trial court for further action consistent with this ruling.

. Current La. C.C.P. arts. 591-597 address the authority of the trial court in class action suits. However, these provisions are oi'sly applicable to actions filed on and after July 1, 1997. See 1997 La. Acts No. 839, § 3; Bank v. New York Life Insurance Company, 98-0551 (La. 12/7/98), 722 So.2d 990, 993 n. 5. Former statutes addressing class actions did not specifically address the trial court’s authority regarding the dissemination, form, and content of a final notice in a class action settlement. See former La. C.C.P. arts. 591-611.

. Because we conclude the trial court exceeded its authority by ordering the inclusion of the cash option letter in the final notice mail-out, we need not address GMC's arguments that (1) the parties agreed in a March 22, 1999 compromise that the cash option letter would not be included in the final notice mail-out, and (2) the trial court’s failure to "analyze the propriety of the cash option letter or Class counsel’s self-dealing and conflicts of interest” supports a conclusion that the June 21, 1999 order was unjustified.

. We note the "Notice” referenced in the second sentence of Section VII.2(d) is the preliminary notice to the settlement class members. This notice has already been sent to the settlement class and is not at issue in this appeal. Although Section VII.2(d) specifically gives the trial court authority to resolve disputes regarding the entities selected to print and mail the preliminary notice, it is debatable whether Section VII.2(d) gives the trial court this same authority to resolve disputes regarding the entity chosen to print and mail the final notice.

. According to GMC's brief, "The Polk Company” is the entity that developed the "database of potential class members” and that “owned the class mailing list necessary to accomplish the [final notice/claim form] mail-out.”

. In assignment of error number four and footnote 32 of its brief, GMC contends that each paragraph of the June 21, 1999 order should be vacated because each paragraph constitutes an impermissible change to the settlement agreement. However, the impermissible nature of each paragraph of the order was not briefed by GMC; therefore, to the extent no argument was made regarding a specific paragraph, the assignment of error is considered abandoned. Louisiana Uniform Rules — Courts of Appeal, Rule 2-12.4; Devers v. Southern University, 97-0259 (La.App. 1 Cir. 4/8/98), 712 So.2d 199, 207.